39586. JOHNSON v. STATE OF GEORGIA et al.

DECIDED OCTOBER 17, 1962—
REHEARING DENIED NOVEMBER 15, 1962.

*Troutman, Sams, Schroder & Lockerman, William H. Schroder, Harold C. McKenzie, Jr., Jack Rogers,* for plaintiff in error.

*Earl B. Self, Solicitor General, Robert E. Coker, John H. Mobley, Sumter Kelley, Eugene Cook, Attorney General, Paul Rodgers, Assistant Attorney General, Charles J. McCarthy, Robert H. Marquis, C. A. Reidinger,* contra.

HALL, Judge. The City of Chickamauga contends that it had the discretionary power to contract to purchase power from the Georgia Power Company or the TVA and that in keeping with its own best interest it chose the latter. We agree that in general such an exercise of legislative discretion is reviewable only at the ballot box. If under our Constitution and laws, a municipal corporation lawfully undertakes to establish and operate an electric distribution system and opens its arms to invite the TVA to supply the power, it is not for this or any other court to forbid the embrace. Nevertheless, we must examine the legality of the provisions of the contract itself. The intervenor contends that the contract between the City of Chickamauga and TVA, under which the TVA is to supply power to the city for distribution, which contract is an integral part of the proposed revenue producing undertaking, is invalid because it contains a provision whereby the *city agrees to resell electricity to customers at rates specified in the contract.* The contract also provides, "If the rates and charges provided for in said resale schedules do not produce revenues sufficient to provide for the operation and maintenance of the electric system on a self-supporting and financially sound basis, including requirements for interest and principal payments on indebtedness incurred or assumed by municipality for the acquisition, extension, or improvement of the electric system (hereinafter called 'System Indebtedness'), the parties shall agree upon, and municipality shall put into effect promptly, such changes in rates and charges as will provide the increased revenues necessary to place the system upon a self-supporting and financially sound basis. If the rates and charges in effect at any time

provide revenues that are more than sufficient for such purposes, as more particularly described in Section 7 hereof, the parties shall agree upon a reduction in said rates and charges, and municipality shall promptly put such reduced rates and charges into effect."

Section 7 provides that the electric system's gross revenues shall be used exclusively for operating expenses, interest and principal on the system indebtedness, reasonable reserves for renewals, replacement, and contingencies, and tax equivalent payments into the municipality's general funds (calculated by applying municipal, county and State property tax rates to the depreciated original cost of tangible property), new construction, retirement of system indebtedness prior to maturity ". . . provided, however, that resale rates and charges shall be reduced from time to time to the lowest practicable levels considering such factors as future circumstances affecting the probable level of earnings, the need or desirability of financing a reasonable share of new construction from such surplus revenues and fluctuations in debt service requirements." The intervenor contends that in contracting with TVA to charge specified rates the city exceeded its powers, being prohibited from contracting as to rates by *Code* § 69-202: "One council may not by an ordinance bind itself or its successors so as to prevent free legislation in matters of municipal government."

A municipal corporation acts in a proprietary rather than a governmental capacity in operating an electric distribution system. *Carruthers v. City of Hawkinsville*, 42 Ga. App. 476 (2) (156 SE 634). The restriction placed upon municipal corporations by *Code* § 69-202 relates only to its governmental functions. *Lawson v. City of Moultrie*, 194 Ga. 699 (4) (22 SE2d 592). Therefore, there is generally no objection to a contract by a municipal corporation for a supply of electrical power which extends beyond the term of office of the officers making the contract. 10 McQuillin, Municipal Corporations (3d Ed.) 410, § 29-101; 37 Am. Jur. 680, § 66. The only restriction is that it must be reasonable in the length of time for which it is to extend. 70 ALR 795; 149 ALR 339; 63 CJS 533, § 979(b); Cooley on Municipal Corporations, 246, § 76. In

view of the fact that electricity must be in the wires at all times, ready to spring to service at the flick of a consumer's switch and counted upon to be available all the time it is being used, we cannot say that the twenty-year contract between the City of Chickamauga and TVA by which the former assures itself of an adequate supply of wholesale electrical power is unreasonable per se as to time.

The fixing of rates by a municipal corporation is the exercise of a governmental function, and it appears settled that, without express statutory authority, the council of a municipality cannot bind itself or its successors by ordinance or contract as to utility rates a municipally operated utility will charge in the future. *Horkan v. City of Moultrie,* 136 Ga. 561 (71 SE 785); *City of Warm Springs v. Bulloch,* 212 Ga. 149 (91 SE2d 13); *Barr v. City Council of Augusta,* 206 Ga. 753 (2) (58 SE2d 823); *Screws v. City of Atlanta,* 189 Ga. 839 (8 SE2d 16); *City Council of Augusta v. Richmond County,* 178 Ga. 400 (173 SE 140); 62 CJS 281, § 139; 37 Am. Jur. 679, § 66; Rhyne, Municipal Law 502, § 23-8; 10 McQuillin, Municipal Corporations (3d Ed.) 412, § 29-101.

The City of Chickamauga contends, however, that *Code* § 69-202 is inapplicable in the present case because of *Code Ann.* § 87-803 (e) (Revenue Certificate Law of 1937, as amended by the Revenue Bond Law of 1957) which authorizes municipalities "To make all contracts; execute other instruments; and do all things necessary or convenient in the exercise of the powers herein granted or in the performance of its covenants or duties, or in order to secure the payment of its bonds." However, when the Revenue Bond Law of 1957 is considered in its totality, neither this nor any of its other provisions renders meaningless the mandate of *Code* § 69-202. *Lawson v. City of Moultrie,* 194 Ga. 699, 701, supra. It is true that the Revenue Certificate Law of 1937, as amended by the Revenue Bond Law of 1957, specifically authorizes a municipality to covenant as to rates in any resolution authorizing the issuance of revenue bonds. *Code Ann.* § 87-806 (a). It is also true that "When the Revenue Certificate Law of 1937 and the Constitution of 1945 [*Code Ann.* § 2-6005] were adopted, the provisions of each as to revenue

certificates became a part of the charter of every municipality of the State." *Lipscomb v. City of Cummings,* 211 Ga. 55 (1) (84 SE2d 3); *Reed v. City of Smyrna.* 201 Ga. 228 (7) (39 SE2d 668). However, this express statutory authority for a municipality to contract with the bond holders as to specified future utility rates does not extend to contracts with the wholesaler of electrical power. "Expressio unius est exclusio alterius." *City of Macon v. Walker,* 204 Ga. 810 (2) (51 SE2d 633).

The contract in question here specifies the electrical rates that the municipality must charge its customers. It also contains provisions under which in the future the rates may be raised to assure that the system is self-supporting and financially sound, and lowered so as to be the lowest practicable after disbursements for the purposes specified in the contract. Even if we assume that these provisions leave to the city some discretionary power to fix rates, this discretionary power must under the contract be shared by the municipality with TVA. We cannot say as a matter of law that the legislative discretion of the City of Chickamauga to establish electric utility rates for its customers in the future is left unfettered under this contract. There being no express general law authorizing the council to bind itself and its successors in this regard, the contract between the City of Chickamauga and TVA is ultra vires and void. *City of Middlesboro v. Kentucky Utilities Co.,* 284 Ky. 833 (146 SW2d 48).[1] Since the invalidity of that contract makes it necessary to reverse the judgment of the trial court, it is unnecessary for us to pass on the other grounds of the intervention.

The trial court erred in entering up judgment validating the revenue bonds of the City of Chickamauga.

*Judgment reversed. Felton, C. J., Carlisle, P. J., Nichols, P. J., Bell, Frankum, Jordan, Eberhardt and Russell, JJ., concur.*

---

[1]Apparently the States of Tennessee, Alabama, and Mississippi have enacted statutes specifically authorizing municipalities to purchase TVA current. 7 George Washington Law Review 557, 570; Memphis Power & Light Co. v. City of Memphis, 172 Tenn. 346 (112 SW2d 817).