## 41406. CITY OF POWDER SPRINGS, GEORGIA et al. v. WMM PROPERTIES, INC.

(325 SE2d 159)

Hill, Chief Justice.

This case raises interesting issues as to the law governing municipal contracts, particularly the power of one city council to bind subse-

quent councils. OCGA § 36-30-3 (a).[1]

In 1980, the City of Powder Springs sought to develop an industrial park upon land annexed by it that had formerly been a part of Cobb County. In order to provide sewer service to the park, easements were sought from several county landowners lying between the city and the annexed land.

One of these county landowners was Mason Varner, predecessor-in-title to the plaintiff-appellee, WMM Properties, Inc. In negotiations with the city manager, Varner obtained as consideration in addition to the $1.00 per foot offered by the city, a right of access to the sewer line. Two deeds granting easements were given by Varner reciting the following consideration with the emphasized language handwritten onto the printed form and initialed by the city manager: A deed dated December 18, 1980, "For and in consideration of the sum of One Dollar ($1.00) per foot *and access to the system where required,*" and a deed dated July 13, 1981, "For and in consideration of the sum of One Dollar Per Foot ($1.00) in hand paid *and access to sewer line.*" These deeds were then recorded by the city, and the sewer line was built along these easements.

WMM bought the property from Varner by deed dated February 28, 1983. Although in making the purchase, WMM did not rely on the language of the recorded easements, it did rely on assurance by the mayor that utility services to that area of unincorporated Cobb would be supplied by the city. As soon as the purchase was made, WMM went ahead with its plans to develop the property as a mobile home subdivision. On April 26, 1983, however, WMM received a letter from the city informing it that the city council had adopted a policy restricting use of the sewer line to industrial uses only.

By this time, preliminary plans for the first phase of its proposed development of 45 lots into single family homes and 301 lots into a mobile home subdivision (not a mobile home park) had been submitted by WMM to Cobb County as authorized by the county's zoning ordinance, but approval was withheld because no satisfactory plan for sewer service had been established. WMM explored other possibilities because septic tanks are not allowed in that area. Use of the county sewer line required condemnation of access easements by the county, while access to other city lines proved economically unfeasible because of the distance and the necessity of using lift pumps.

WMM then sued the city for mandamus and injunction to enforce its rights under the easements. The trial court granted the injunction, finding that the city manager is empowered to make and

---

[1] For a discussion of this uncertain area, see Sentell, *Studies in Georgia Local Government Law*, 3rd (1977), chapters XVII and XVIII.

execute all lawful contracts on behalf of the city, provided that contracts involving more than $1,000 shall not be valid and binding until approved by the mayor and council; that the minutes of the city council showed that the city council resolved to obtain the necessary sewer easements to serve the industrial park by condemnation or negotiation, payment to be no more than $1 per lineal foot; that the consideration to be paid Mason Varner ($1 per foot plus access to the sewer) was approved by the council at an executive session; that minutes of executive sessions are not maintained; that the city manager believed he was authorized to grant sewer access to Varner; that Varner was induced to grant the easements because of the access afforded and he would not have done so otherwise; that the city authorized payment to Varner in the sum of $1,993 for one easement [the other easement being 505 feet or $505 and not requiring approval by the mayor and council]; that the easements from Varner were recorded; that the city manager was authorized to negotiate with other landowners to provide them with one free tap-on; that no express approval of free tap-ons appears in the council's minutes; that the city has provided access to the sewer to other landowners; that prior to plaintiff's purchase of the Varner property plaintiff received assurance from the mayor that city sewer service would be provided and plaintiff relied upon such assurances in acquiring the property; that the zoning on the property has not changed since the easements were acquired; that plaintiff has expended over $200,000 to date developing the tract and is obligated to expend an additional $400,000; and that the mayor was opposed to plaintiff's developing the tract as a mobile home subdivision but would accept "straight residential" rather than insist on industrial use only.

The trial court concluded that the acquisition of sewer easements outside the city was authorized by the city's charter (Ga. L. 1970, pp. 2762-63), that the city manager had authority to negotiate easements authorizing access to the sewer, and that the city ratified the easements by authorizing payment of $1,993, by recording them, by building the sewer, and by representing to plaintiff that access to the sewer would be provided. The court ordered the city to permit plaintiff to have access to the sewers and the city appeals.

The city enumerates the following errors: (1) The trial court erred in failing to find that the sewer access provisions of the easements were ultra vires and void because they violate OCGA § 36-30-3 (a), and because the easements do not appear on the minutes of the meetings of the mayor and city council; (2) the trial court erred in finding that the city manager had authority, actual or apparent, to authorize sewer access; and (3) the trial court erred in finding that the access provisions, being void ab initio, could be and were ratified. It should be noted that the city does not contend that the easements

upon which it laid the sewers are invalid, nor could it, see Ga. L. 1970, pp. 2761, 2762-3; it contends that the sewer access provisions of the easements are invalid.

1. We find first that the trial court did not err in finding that the city manager had actual authority to negotiate the sewer access provisions here in issue. As to the easement for $505, his authority was expressed in the city charter. Ga. L. 1979, pp. 3437, 3448. As to the easement for $1,993, there was evidence to support the trial court's finding that such authority was conferred upon the city manager by the city council. The trial court's findings of fact shall not be set aside unless clearly erroneous. OCGA § 9-11-52 (a).

OCGA § 36-10-1 requires that all contracts entered into by a county governing authority shall be in writing and entered on its minutes. The requirement that contracts be entered on its minutes is not applicable to a municipality. See *Wilson v. Strange*, 235 Ga. 156, 161 (219 SE2d 88) (1975).

However, having found that the city manager had authority to negotiate the sewer access clauses of the easements and that they are not invalid for failure to be entered on the minutes, we must nevertheless determine whether the access clauses are binding on subsequent city councils.

2. OCGA § 36-30-3 (a) (formerly Ga. Code Ann. § 69-202) provides as follows: "One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." This Code section originated from *Williams v. City Council of West Point*, 68 Ga. 816 (1882), and carries with it the problems inherent in codification of court decisions. The prohibition was extended to contracts in *Screws v. City of Atlanta*, 189 Ga. 839 (8 SE2d 16) (1940). Contracts to which the prohibition is not applicable were examined in *Brown v. City of East Point*, 246 Ga. 144 (268 SE2d 912) (1980). It is clear that the prohibition is applicable to a municipality's governmental functions, not its proprietary functions. *Lawson v. City of Moultrie*, 194 Ga. 699 (4) (22 SE2d 592) (1942); *Jonesboro Area Athletic Assn. v. Dickson*, 227 Ga. 513 (181 SE2d 852) (1971); Sentell, *Studies in Georgia Local Government Law*, 3rd (1977), pp. 583, 587; see also McQuillin, 10 Municipal Corporations, § 29.101 (1981).

Consideration of whether municipal contracts are subject to the prohibition of OCGA § 36-30-3 (a) involves at least 4 questions: (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If

governmental in nature, is the contract subject to an exception?[2] (3) If not, is the contract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition? In this case we deal with the first question.

Numerous cases, relied upon by the city, hold that the construction and maintenance of a sewer system is for the protection of the public health and is therefore a governmental function. See *City of Douglas v. Cartrett*, 109 Ga. App. 683, 685 (137 SE2d 358) (1964); *Pair Dev. Co. v. City of Atlanta*, 144 Ga. App. 239, 241 (240 SE2d 897) (1977). However, we do not deal here with the city's authority to construct or maintain a sewer, or its liability in connection therewith. We do not deal here with the validity of the easements; their validity is certain. Ga. L. 1970, supra, at pp. 2762-63. We deal with the validity of the access clause alone.

Three cases have been found which touch upon this subject, all involving sewer easements or agreements. In *Horkan v. City of Moultrie*, 136 Ga. 561 (71 SE 785) (1911), in exchange for permission to lay a sewer line, the city granted the landowner free water and sewer service to his building. It was held that one council could not barter away, so as to bind a subsequent council, its governmental power to fix water rates. In *Neal v. Town of Decatur*, 142 Ga. 205 (82 SE 546) (1914), citing *Horkan*, supra, the court held that an exemption from future sewer assessments was ultra vires and void. To the same effect, and also involving an exemption from sewer assessments, see *The J. S. H. Co. v. City of Atlanta*, 193 Ga. 1 (17 SE2d 55) (1941). In each of these cases, the court focused on a particular provision and found that governmental power (fixing water rates or imposing sewer assessments) had been impaired by such provision. No such impairment of governmental power occurred here by virtue of the access clause.[3]

In *Collier v. City of Atlanta*, 178 Ga. 575 (173 SE 853) (1934), it was stated that although the city had authority to extend its water mains beyond its limits and into the territory of DeKalb County, it could not compel persons in such territory to accept water service nor could the city "be compelled to render water service to such person where it has not voluntarily contracted to do so." In the case now

---

[2] In *City of Summerville v. Ga. Power Co.*, 205 Ga. 843 (1) (55 SE2d 540) (1949), the court held that contracts within the express authority of a city charter are not within the prohibition that one city council may not bind another. Counsel for the city urges that this "exception" repeals the prohibition. We do not decide this case on this "exception" and hence do not reach this issue. We note, however, that there is some question as to whether the contract in issue in *City of Summerville* was governmental. Compare *Johnson v. State of Ga.*, 107 Ga. App. 16, 19 (128 SE2d 651) (1962).

[3] It should be pointed out that the easements in issue here (as opposed to the other property owners who got "one free tap-on") do not provide that access shall be "free"; these easements provide only for "access" to the line. The grantor of the easements and his successor, the plaintiff, can insist on no more than the easements expressly provide.

before us, the city has voluntarily contracted to provide access to the sewer. It has not contracted away its power to make sewer assessments or impose tap-on or usage charges. It has not bound itself so as to prevent free legislation in matters of municipal government, see OCGA § 36-30-3 (a), supra, particularly in view of the fact that it has no authority to legislate as to the use of land outside its corporate limits.

We hold that a municipality's agreement to provide access to its sewer system does not impair a governmental function and therefore is not subject to the prohibition of OCGA § 36-30-3 (a).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 30, 1985.

*Barnes & Browning, Roy E. Barnes, Jerry A. Landers, Jr.,* for appellants.

*Hylton B. Dupree, Jr., Mark A. Johnson, Irma B. Glover,* for appellee.