A91A0570. HENDRICKS v. ENTERPRISE FINANCIAL CORPORATION.
(405 SE2d 566)

BIRDSONG, Presiding Judge.

Richard L. Hendricks appeals the order of the trial court partially granting appellee Enterprise Financial Corporation's (Enterprise) motion for summary judgment as to appellant's affirmative defenses of release, estoppel and waiver, and as to count one of appellant's counterclaim of fraud.

Appellee's predecessor corporation, JMS Financial, provided certain financing for the Georgia Nut & Bolt Company owned by appellant, his brother Allen (Al) Hendricks, and his mother. Appellant executed an unconditional guarantee agreement in his personal capacity as part of the financial arrangements with JMS. Appellant subsequently left the company believing he had been released from the guarantee by appellee; the company defaulted and appellant refused

to honor his unconditional guarantee agreement.

The record reflects the chief executive officer of JMS, now president of appellee, had become concerned about the perceived conflict between the brothers in managing the company and had written a letter suggesting "an immediate attempt to reconcile your differences" be made. Appellant and his brother Allen discussed appellant's quitting the company, transferring all his stock to Allen, and obtaining a release from his personal guarantee from appellee. Thereafter appellant drafted a letter to JMS, which pertinently states: "In order to promote uniformity of direction in [the company] . . . I have reached an agreement with Al Hendricks in which I agree to transfer to him my remaining . . . interest in [the company] in exchange for the simultaneous release of my personal guarantee. . . . I have discussed this agreement with [my attorney] and he is prepared to execute the appropriate documents immediately upon receiving my personal guarantee from you." Appellant apparently transferred the stock to his brother by giving a copy of the letter to his attorney, and "directing him to accomplish that"; thereafter going to the meeting with the officers of JMS.

Appellant claims that JMS by a pattern of conduct, including its prior conduct in releasing others from their personal guarantees, its failure to voice any objection at the meeting or at any other time to the stock transfer and proposed release arrangement, and by its CEO's having subsequently caused him to believe that the reason he had not received release from his personal guarantee was that she was waiting to confirm the stock transfer was complete, did in fact enter into an agreement to release the guarantee or in the alternative did engage in conduct constituting estoppel and waiver. *Held*:

1. Appellant admits inter alia in his deposition that after taking the letter to his attorney he met with the CEO and another officer of JMS; these officers read the letter and said they had no discussion of it. Prior to this meeting appellant admits he can recall no particular discussion with JMS officers about being released from his personal guarantee; he had an agreement with his brother about transferring the stock, typed up the letter, and presented the letter for the first time to JMS at the meeting. Appellant also admits that before the meeting no one from JMS ever asked him to leave the company or to transfer his stock to his brother; and, no one from JMS ever specifically said the terms of the letter were acceptable. Appellant further admitted in his deposition testimony that he resigned from the stock company and surrendered his stock interest at the time the letter to JMS was drafted and "on or about that exact time" of his meeting with the officers of JMS.

To the extent other evidence offered by appellant is inconsistent with these admissions and such inconsistencies are not reasonably ex-

plained in the record, we must apply the rule found in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680). Compare *Gentile v. Miller, Stevenson & Steinichen*, 257 Ga. 583 (361 SE2d 383).

2. It is clear from the evidence of record that no written agreement was ever entered between appellee or its predecessor JMS and appellant releasing, canceling, or otherwise terminating appellant's personal guarantee agreement. Pursuant to OCGA § 13-5-30 (2), the personal guarantee agreement had to be and was executed in writing. As the contract of guaranty had to be in writing under the Statute of Frauds, "so likewise, under the general rule, any proposed modification thereof, to be effective, must also have been in writing." *Sikes v. Mallonee*, 11 Ga. App. 632 (1) (75 SE 988); see *Littman v. Suburban Opticians*, 244 Ga. 702, 705 (261 SE2d 607); see also *Johnson v. Ashkouti*, 193 Ga. App. 810 (1) (389 SE2d 27). The guarantee agreement is clear and unambiguous. "Parol evidence is not admissible to vary or contradict the unconditioned promise to pay provided in a note or a guaranty agreement. 'The cases are legion that a complete and unambiguous instrument cannot be varied or contradicted by reliance upon inconsistent parol statements.' " *Rizk v. Jones*, 148 Ga. App. 473, 474 (251 SE2d 360), aff'd 243 Ga. 545 (255 SE2d 19).

Assuming arguendo appellant's parol evidence was admissible no different result would result. Appellant concedes appellee never expressly accepted his offer, but in essence asserts subsequent words and conduct by appellee's officers caused him to believe that his offer to leave the company and to transfer his stock in return for the release of his personal guarantee had been accepted; and, that in reliance thereon he was induced to and did transfer the stock and leave. Certain of appellee's subsequent conduct, however, could not have induced such action by appellant, as appellant by his own admission (see Division 1) concedes he resigned from the company and transferred his stock at the time the letter was drafted and "on or about [the] exact time" of the meeting with JMS.

Although under OCGA § 13-5-31 certain performed and partially performed agreements are enforceable without writing, the parol evidence relied upon by appellant in support of the alleged agreement releasing his guaranty is inadequate for this purpose. The part performance referred to in OCGA § 13-5-31 rests upon the principle of estoppel. *Nowell v. Mayor &c. of Monroe*, 177 Ga. 648, 653 (171 SE 136). Thus, "[w]here the law requires a contract to be in writing [as must any subsequent agreement to modify effectively a contract required to be in writing under the Statute of Frauds], a court of equity will enforce an agreement not so executed only where 'the parties have so acted upon and by virtue of the contract as that it would be a *fraud* to permit the defendant to repudiate it.' [Cits.] The relief

granted in such a case is allowed upon the principle of estoppel, and it is incumbent upon the complainant to show not only that his act was performed in pursuance of and on the faith of the contract, but that it was accepted by the other party in accordance therewith, *mutuality of action or its equitable equivalent* being an essential ingredient of the cause of action." (Emphasis supplied.) Id. at 652-653.

In this case, there exists no evidence giving rise to a genuine issue of material fact that appellee expressly or impliedly accepted appellant's offer, or that it ever obtained any personal use of the relinquished stock.

Although estoppel usually is an issue of fact (*Tally v. Atlanta Nat. &c. Trust*, 146 Ga. App. 585, 589 (246 SE2d 700)), like other issues of fact an estoppel case may be resolved as a matter of law through the vehicle of summary judgment where, as here, plain, palpable, and undisputed evidence shows that an estoppel has not occurred (cf. *Soto v. Roswell Townhomes*, 183 Ga. App. 286, 288 (358 SE2d 670)). Compare *Regional Pacesetters v. Halpern Enterprises*, 165 Ga. App. 777, 781 (1) (300 SE2d 180) with *Peter E. Blum & Co. v. First Bank &c. Corp.*, 156 Ga. App. 680, 682 (2) (275 SE2d 751) (motion for judgment on pleadings). Under the attendant circumstances, the subsequent words and conduct of appellee's officers fail to create any genuine issue as to the existence of any equitable equivalent to mutuality of action.

Assuming appellant did not cause a transfer of his stock before his initial meeting with appellee's officers, nothing the officers said or did, as reflected in this record, reasonably could have generated a subsequent detrimental reliance or would otherwise have given rise to such inducement on the part of appellant. The guarantee agreement signed by appellant clearly and unequivocally provides that "this guaranty embodies the whole agreement of the parties and may not be modified except in writing, and *no course of dealing* between Lender [JMS Financial] and any of the undersigned [appellant] shall be effective to change or modify this guaranty." (Emphasis supplied.) We are satisfied, as a matter of law, that this clear and unambiguous provision served to place appellant on due notice that he could not thereafter reasonably rely upon any words or other course of dealing to his inducement, other than a modification agreement actually reduced to writing, in order to change or modify the written guarantee; and, of equal importance, in view of this provision appellee could not reasonably expect that its particular conduct, even when such conduct is viewed in the light most favorable to appellant, would induce the asserted action or forbearance on the part of appellant. See generally OCGA §§ 13-3-44 (a); 24-4-27; compare *Peter E. Blum &c.*, supra, and *Hawkins Iron &c. Co. v. Continental Ins. Co.*, 128 Ga. App. 462, 464 (3) (196 SE2d 903); see also *Fidelity &c. of Maryland v. West*

*Point Constr. Co.*, 178 Ga. App. 578 (1) (344 SE2d 268).

Examining the record in its totality, we find *Nowell, Sikes*, and *Rizk*, supra, to be controlling, and the authority relied upon by appellant to be distinguishable.

3. Regarding grant of summary judgment as to count one of the counterclaim, we likewise find the trial court did not err. The record, in view of its posture as reflected in Division 1, above, contains no genuine issue of material fact as to any fraudulent misrepresentation, actual or constructive, by appellee's agents transmitted to appellant before he acted to transfer his stock and leave the company.

4. Assuming any semblance of issues of fact exist in the record in support of each of appellant's defenses and count one of his counterclaim, such semblances are at best "shadowy" in nature. "Summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and, 'while there may be some "shadowy semblance of an issue" (cit.), the case may nevertheless be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion.' " *Peterson v. Liberty Mut. Ins. Co.*, 188 Ga. App. 420, 424 (373 SE2d 515). We are satisfied that the appellee/plaintiff has met the requisite test required for the issuance of summary judgment.

Appellant's other enumerations of error and assertions in his brief are without merit.

*Judgment affirmed. Pope and Cooper, JJ., concur.*

DECIDED APRIL 18, 1991.

*Fine & Block, Paul R. Jordan*, for appellant.

*Smith, Gambrell & Russell, E. Kendrick Smith, Cullen C. Wilkerson*, for appellee.