A00A2160. SMITH v. DIRECT MEDIA CORPORATION.
(544 SE2d 762)

RUFFIN, Judge.

Direct Media Corporation ("Direct Media") sued Lance Smith d/b/a Lance Smith, P.C. for breach of contract. Following a bench trial, the court rendered a judgment in favor of Direct Media. Smith appeals, asserting that the trial court erred in finding in favor of Direct Media.[1] We disagree and therefore affirm.

Appeals from bench trials, where the trial judge sits as the trier

---

[1] Although Smith enumerates a second claim of error, he has not supported this claim by citation of authority or argument, and it is therefore deemed abandoned. See Court of Appeals Rule 27 (c) (2).

of fact and has the opportunity to assess the credibility of the witnesses, are reviewed under the clearly erroneous standard.[2] Under this standard, we will not disturb a trial court's findings of fact if there is any evidence to support them.[3] In this case, neither party asked the trial court to issue findings of fact, and the trial court therefore did not make any.[4] Implicit in the court's judgment, however, is its finding that Smith is liable to Direct Media under the parties' alleged contract.[5] There is ample evidence supporting this finding.

The evidence shows that Direct Media publishes a small, regional telephone directory for Brunswick. In June and July 1996, Smith negotiated with Direct Media to advertise his law practice on the outside back cover of its Brunswick directory for the price of $10,000. The next month, after Smith paid Direct Media a $2,000 deposit for his advertisement, the company sent Smith an "advertising order" form, which generally described the advertisement discussed by the parties. The order form provided in part that it would become a contract when signed by Smith.

Although Smith did not return the advertising order, he continued working with Direct Media to create his advertisement. Smith testified that he met with a Direct Media representative "four or five times." In addition, Smith provided Direct Media with documents detailing the advertisement he wanted placed on the directory. The documents included a personal photograph that Smith wanted on the advertisement and a copy of an advertisement Smith previously placed in another phone book, which he annotated to show how he wanted his advertisement with Direct Media to appear. While Direct Media was creating the advertisement for Smith, the company repeatedly requested that Smith return the signed order form and notified him that it needed it by August 30. On August 30 Direct Media received a contract signed "Lance Smith by T. S. K." Smith testified that T. S. K. is Tarry Kirkland, a paralegal in his firm.

After creating the advertisement, Direct Media sent a proof to Smith to correct any errors made during the typesetting and layout process. A form accompanying the proof stated: "PLEASE SIGN AND RETURN WITH ORIGINAL COPY BY 09-23-96." The form also notified Smith that "[f]ailure to return this proof sheet will result in the printing of your ad as shown above."

Smith acknowledged that he received the advertisement proof, but he did not return the proof by the deadline. In a letter dated Sep-

---

[2] See *Fontaine v. Sidelines IV, Inc.*, 245 Ga. App. 681, 682 (1) (538 SE2d 137) (2000).
[3] See id.
[4] See OCGA § 9-11-52 (a).
[5] See *Nat. Chemco v. Union Camp Corp.*, 209 Ga. App. 317, 318 (433 SE2d 691) (1993).

tember 24, 1996, however, Smith requested that his advertisement not be included in the directory and that Direct Media return his deposit. Direct Media's president testified that because the back cover is a premier position and the deadline for accepting advertisements had passed, he did not cancel Smith's advertisement. Although the president attempted to contact Smith several times, Smith never returned his calls.

Direct Media sued Smith for the $8,000 balance due on the advertisement. Smith answered, denying that there was a contract between the parties. Smith testified at trial, and argues on appeal that there was no contract because he never, directly or by implication, authorized Kirkland to sign the contract, because he did not return the advertisement proof and because the Statute of Frauds required a signed contract.

1. The absence of Smith's signature is not fatal to Direct Media's claim. Though it is true that the advertising order form required Smith's signature for the form to become a contract,[6] the trial court was authorized to find that Smith was equitably estopped from raising this defense. Estoppel arises under circumstances "where it would be more unjust and productive of evil to hear the truth than to forbear investigation."[7] These circumstances generally exist where there is "some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury."[8] Thus, in a case such as this, where a party asserts that he has a defense to contractual liability, he may, by reason of his conduct, be estopped from relying on this defense.[9] Whether a party is estopped by his conduct is generally a question for the factfinder to resolve.[10]

In this case, Direct Media presented abundant evidence authorizing the trial court, as factfinder, to find that Smith was equitably estopped from relying on his defense that he was not bound because he did not execute the contract. Though we will not assume that the trial court found that Smith intentionally deceived Direct Media, the evidence authorized the court to find Smith culpable of such gross

[6] See *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 134-135 (6) (345 SE2d 330) (1986).

[7] OCGA § 24-4-24 (b).

[8] OCGA § 24-4-27.

[9] See *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 645 (2) (278 SE2d 182) (1981); see also *Crystal Blue Granite Quarries v. McLanahan*, 261 Ga. 267, 269 (3) (404 SE2d 266) (1991) (finding sufficient evidence for factfinder to determine that lessor was equitably estopped from denying existence of lease even though the parties did not execute a lease); *Hood v. Duren*, 33 Ga. App. 203, 206 (125 SE 787) (1924) (ruling that, in light of the surrounding circumstances, defendant was estopped from asserting his minority in defense of a contract where plaintiff was induced to act to his injury by reason of the false and fraudulent representation of the defendant with respect to his apparent majority).

[10] See *Eiberger v. West*, 247 Ga. 767, 769 (1) (a) (281 SE2d 148) (1981).

negligence as to amount to constructive fraud.

If, as Smith contends, he never intended to be contractually liable to Direct Media for the advertisement because he did not sign the order form, then his conduct toward the advertising company was misleading. Smith negotiated extensively for his advertisement to be placed on the back cover of Direct Media's phone directory, he paid a large deposit for this advertisement, he met frequently with a Direct Media representative to create the advertisement, and he provided Direct Media with documents detailing how he wanted the advertisement to appear. There is no evidence that, throughout this entire process, Smith gave any indication to Direct Media that he did not consider himself liable for the advertisement on the back cover. Even when Direct Media sent Smith the proofs of the final advertisement with a notice that his failure to return the proof would constitute acceptance, Smith failed to apprise the company that he did not consider himself financially liable under the parties' agreement because he did not sign the order form.

The evidence also shows that Direct Media was misled by Smith's conduct. Obviously, Direct Media was impressed by Smith's $2,000 deposit and his active participation in the creation of his advertisement. The company continued developing the advertisement blissfully ignorant that Smith never intended to be financially bound for the advertisement. Likewise, Direct Media continued to rely on Smith's conduct when he failed to return the advertisement proof by the stated deadline. In light of Smith's considerable working relationship with Direct Media, and his acknowledgment that he received the advertisement proof, his failure to return the proof, if not intentional, was certainly misleading.

Finally, the trial court was authorized to find that Direct Media was injured by Smith's conduct. The evidence showed that the company had expended significant resources creating the advertisement, and that it did not learn of Smith's true intentions until after the deadline for accepting advertisements had expired. Direct Media was thus left with the option of publishing Smith's advertisement in its premium position, or none at all.

Under these circumstances, we conclude that there was no clear error in the trial court's implied finding that Smith was equitably estopped from denying the existence of the contract.

2. Smith also asserts that he is not liable for the advertisement because he never approved the advertisement proof sent to him by Direct Media. The basis for this argument is unclear. As stated above, Direct Media expressly informed Smith that his failure to return the proof by the deadline, "will result in the printing of your ad as shown above." We thus find no clear error by the trial court based on this argument.

3. Finally, Smith asserts the trial court erred in entering judgment against him because the Statute of Frauds required a written contract. In light of our conclusion in Division 1 that Smith is estopped from denying the existence of a contract, it is unnecessary to address this assertion. Moreover, we note that the principles of estoppel relied on above underlie OCGA § 13-5-31, which exempts certain partially performed contracts from the Statute of Frauds.[11]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 1, 2001.

*W. Lance Smith III*, pro se.
*Joseph E. East*, for appellee.

---

[11] See *Hendricks v. Enterprise Financial Corp.*, 199 Ga. App. 577, 579-580 (2) (405 SE2d 566) (1991).