A09A0270, A09A0369. CITY OF HOLLY SPRINGS v. CHEROKEE COUNTY; and vice versa.
(682 SE2d 644)

SMITH, Presiding Judge.

These related appeals concern past and proposed property annexations by the City of Holly Springs.[1] In Case No. A09A0270, the City of Holly Springs appeals the trial court's grant of Cherokee County's motion for summary judgment and denial of the city's motion for summary judgment. In Case No. A09A0369, the county appeals the trial court's decision that a 1988 property annexation by the city was permitted by the relevant annexation statutes and therefore was not ultra vires and void as a matter of law. Because the trial court correctly concluded that the city had the statutory authority to annex, we affirm in Case No. A09A0369. In Case No. A09A0270, the trial court concluded that, even if the city had the power to annex, it had failed to complete the annexation according to the statutory procedure. It concluded that the city therefore could not assert a claim of estoppel against the county for failing to challenge the 1988 annexation in a timely fashion. This conclusion on the part of the trial court was error, and we therefore affirm in part and reverse in part in Case No. A09A0270.

The relevant facts are not in dispute. In 1988, the city requested by letter that the county consider the annexation by the city of portions of Sixes Road and Marble Quarry Road "at your earliest convenience." The county's sole commissioner approved the annex-

---

[1] The appeals were originally filed in the Georgia Supreme Court, but with Sears, C. J., Hunstein, P. J., and Carley, J., dissenting, the cases were transferred to this court by the Supreme Court on the ground that they did not invoke that court's equity jurisdiction.

ation on April 26, 1988, and the approval was entered on the city council's minutes on May 16, 1988. It does not appear that the annexation was memorialized in an ordinance at that time, surveyed, or filed with the Secretary of State. It is undisputed, however, that both the city and the county took various actions consistent with the annexation of the roadways and inconsistent with continued county control.

The city established speed limits on Sixes Road and Marble Quarry Road with the knowledge and approval of the county engineer. City police officers have patrolled those roads and issued traffic tickets on those roads since 1988. The city received permits from the Georgia Department of Public Safety to use speed detection devices on those roads. The city has also maintained the roadways, including a major repaving project. In discussions with the county engineer, the city agreed to set the speed limit for a portion of Sixes Road and to pay for various costs connected with the roadways, including street lighting and traffic signals. The county's official maps, including the street map, future growth boundaries map, and zoning map, show the roadways as part of the city. In addition, in 2003 the city and county entered into a "Growth Boundary Resolution" acknowledging the existing city limits. The city planner testified that the map attached to that resolution included Sixes Road and Marble Quarry Road as part of the city boundary, and he attached to his affidavit the relevant enlarged portion of the map.

Between 1988 and 2007, the city annexed various parcels of land along the roadways, including one annexation that took place after the filing of this action. So far as appears from the record, any defect in the 1988 annexation was never raised by the county during that time. In 1997, the city retrospectively enacted an ordinance annexing Sixes Road and Marble Quarry Road along with five other roadways. Again, it does not appear from the record that the county raised any objection.

In May 2007, however, after the city notified the county of several additional annexation requests, the county objected to proposed rezoning and raised the issue of lack of contiguity with the existing city boundaries. The county then filed this action seeking declaratory judgment, a temporary restraining order, and injunctive relief against the city, asserting that the 1988 annexation of Sixes Road and Marble Quarry Road had been improper. Cross-motions for summary judgment were filed.

In a lengthy order, the trial court determined that the 1988 annexation was substantively authorized by the terms of the statute itself, and thus not ultra vires and void as a matter of law. It further concluded that the county by its inaction for 20 years was estopped to raise any objection that the 1988 annexation itself was improper.

3

It then ruled, however, that the city had failed to comply with the procedural requirements of the relevant Code section and that its attempted annexation of the property therefore was invalid, ultra vires, and void. Because of this procedural defect, the trial court concluded that the city could not assert a claim of estoppel against the county with respect to the 1988 annexation. The trial court granted the county's motion for summary judgment and denied the city's cross-motion, while observing, "Since the Court has seen that this decision will likely receive appellate review, a clear answer to these questions will be welcomed." This appeal followed.

1. We agree with the trial court that the county was estopped by its failure to act in a timely fashion to oppose the 1988 annexation. Since 1988, the city has maintained the roadways in question, including a complete repaving of Marble Quarry Road, with the knowledge and approval of the county. It has patrolled the roads, set speed limits, and otherwise exercised control over the roadways. Moreover, numerous parcels of property have been annexed in the intervening time period. And the county not only approved the annexation in 1988; it has maintained its zoning and planning maps showing the property in question as part of the city.

> Estoppel may be used to prevent a party from denying at the time of litigation a representation that was made by that party and accepted and reasonably acted upon by another party with detrimental results to the party that acted thereon. The doctrines of estoppel are primarily negative in their operation against the party making the statement or admission, rather than creative of any new rights in the opposite party.

(Citation and punctuation omitted.) *Wilson v. Keheley & Co.*, 177 Ga. App. 769, 770 (2) (341 SE2d 245) (1986). See also *Smith v. Direct Media Corp.*, 247 Ga. App. 771, 773 (1) (544 SE2d 762) (2001). While the question of estoppel "is generally a question for the fact finder to resolve [cit.]," id., in this case the facts supporting estoppel are not disputed by the county, which relies instead on its assertion that the 1988 annexation was ultra vires and void, thus forbidding the application of the principle of estoppel under OCGA § 45-6-5.

In the case of public officers, however, a claim of estoppel as to their past acts may only be asserted in certain circumstances.

> It is true that the powers of all public officers are defined by law, and all persons must take notice thereof; and the public can not be estopped by the acts of any officer done in the exercise of a power *not conferred*. OCGA § 45-6-5. But the

converse of this proposition is equally true, that the public can be, and will be, estopped by the acts of any public officer done in the exercise of a power which is expressly conferred by law.

(Citation and punctuation omitted; emphasis in original.) *Quillian v. Employees' Retirement System of Ga.*, 259 Ga. 253, 254 (3) (a) (379 SE2d 515) (1989). We must therefore first consider whether the 1988 annexation was made in the exercise of an expressly conferred power and thus subject to the principle of estoppel.

### Case No. A09A0369

2. The statutory scheme for the annexation of land by municipal corporations has been considerably altered both legislatively and judicially since 1988. As we observed in connection with the attempted annexation of a roadway in *City of Smyrna v. Adams*, 255 Ga. App. 453 (565 SE2d 606) (2002):

In 1985, there were three methods by which a municipality in Georgia could annex property other than by amendment of its corporate charter by an Act of the General Assembly. These methods were (1) in counties with fewer than 100,000 residents, annexation by 100 percent approval of the landowners of the affected area; (2) annexation by application of the owners of at least 60 percent of the land and 60 percent of the electors of the affected area (the 60 percent method); and (3) annexation by resolution and referendum. [Cits.]

Id. at 454. The same statutory scheme remained in place in 1988.[2] The first method, sometimes called the "100 percent method," was available to the city during that time, and the applicable Code sections were OCGA §§ 36-36-1 and 36-36-2 as then codified.[3] Former OCGA § 36-36-2 provided:

(a) Authority is granted to the governing bodies of the several municipal corporations of this state to annex to the

---

[2] These provisions were identical to Ga. Code Ann. §§ 69-902 and 69-903. The latter section was revised in 1976. Ga. L. 1976, p. 1011. The Code of 1981 redesignated these sections as OCGA §§ 36-36-1 and 36-36-2, but with their numerical order reversed. The annexation statutes were extensively revised and renumbered in 1992, and these sections now appear as OCGA §§ 36-36-20 and 36-36-21. Ga. L. 1992, p. 2592.

[3] While we held in *Adams* that the "100 percent method" could not be used in Cobb County because its population exceeded 100,000, id. at 454, the population of Cherokee County at the census of 1980 was 51,699 and did not exceed 100,000 in a decennial census until the census of 2000.

existing corporate limits thereof unincorporated areas contiguous to the existing corporate limits at the time of such annexation, upon the written and signed applications of all of the owners of all of the land, except the owners of any public street, road, highway, or right of way, proposed to be annexed, containing a complete description of the lands to be annexed. Lands to be annexed at any one time shall be treated as one body, regardless of the number of owners, and all parts shall be considered as adjoining the limits of the municipal corporation when any one part of the entire body abuts such limits. When such application is acted upon by the municipal authorities and the land is, by ordinance, annexed to the municipal corporation, a complete survey by a competent surveyor, not necessarily a county surveyor, shall be filed as a part of the ordinance annexing the territory and a copy, certified to by the clerk or similar official of the municipal corporation, shall be filed with the Secretary of State of this state. When so annexed, such lands shall constitute a part of the lands within the corporate limits of the municipal corporation as completely and fully as if the limits had been marked and defined by special Act of the General Assembly.

(b) This article shall not apply to any municipal corporation within a county having a population of 100,000 or more persons according to the United States decennial census of 1960 or any future such census.

"Contiguous area" was defined in former OCGA § 36-36-1:

As used in this article, the term "contiguous area" means any area which, at the time annexation procedures are initiated, either abuts directly on the municipal boundary or would directly abut on the municipal boundary if it were not otherwise separated from the municipal boundary by lands owned by the municipal corporation or some other political subdivision, by lands owned by this state, or by the definite width of (1) any street or street right of way, (2) any creek or river, or (3) any right of way of a railroad or other public service corporation which divides the municipal boundary and any area proposed to be annexed. If, at the time annexation procedures are initiated, the entire area to be annexed is owned by the municipal governing authority to which the area is to be annexed and if the annexation of municipally owned property is approved by resolution of the

governing authority of the county wherein the property is located, then the term "contiguous area" shall mean any area which, at the time annexation procedures are initiated, abuts directly on the municipal boundary or which would directly abut on the municipal boundary if it were not otherwise separated from the municipal boundary by lands owned by the municipal corporation or some other political subdivision, by lands owned by this state, or by the definite width or by the length of (1) any street or street right of way, (2) any creek or river, or (3) any right of way of a railroad or other public service corporation which divides the municipal boundary and any area proposed to be annexed.

We agree with the trial court that the 1988 annexation was substantively permitted by the relevant Code sections and therefore not in and of itself ultra vires.[4] The county contends that the annexation was void as an unauthorized "spoke" or "stem" annexation. It relies on the 1976 revision of OCGA § 36-36-1 allowing only the annexation of property separated by "the definite *width* of any street or right-of-way" (emphasis supplied), and the decisions relying on that revision. These decisions, however, do not involve the annexation of a roadway alone, but rather the annexation of a parcel of property not contiguous to the municipality and connected to it only by a width or length of roadway. See, e.g., *Cooper v. City of Gainesville*, 248 Ga. 269 (282 SE2d 322) (1981); *Paulding County v. City of Hiram*, 240 Ga. 220 (240 SE2d 71) (1977). While the annexation of an isolated property at the end of a length of roadway was a forbidden "spoke and stem" annexation under the older decisions and the express language of OCGA § 36-36-1, the annexation of a roadway alone was not so prohibited. In fact, the relevant Code section expressly provides that "[l]ands to be annexed at any one time shall be treated as one body, regardless of the number of owners, and all parts shall be considered as adjoining the limits of the municipal corporation when any one part of the entire body abuts such limits." Former OCGA § 36-36-2 (a).

This construction is supported by the action of the General Assembly adding the following language to OCGA § 36-36-21 in 2000: "Except as provided in subsection (c) of Code Section 36-36-20, nothing in this article shall be construed to authorize annexation of the length of any public right of way except to the extent that such

---

[4] On appeal, the city for the first time raises the argument that Sixes and Marble Quarry Roads were not in the county road system and that it has the power to accept the roads into its street system under OCGA § 32-4-1. But we need not reach this issue.

right of way adjoins private property otherwise annexed by the municipal corporation." It follows that such an annexation was permitted by the statute before the enactment of that amendment. "It is a well settled canon of statutory construction that statutes are presumed to be enacted by the legislature with knowledge of the existing law. [Cits.]" *Hart v. Owens-Illinois, Inc.*, 250 Ga. 397, 400 (297 SE2d 462) (1982). And "we must construe all related statutes together, give meaning to each part of the statute, and avoid constructions which result in surplusage and meaningless language. [Cit.]" *Lawson v. State*, 224 Ga. App. 645, 647 (3) (a) (481 SE2d 856) (1997). The statutory scheme as it existed in 1988 accordingly allowed the annexation of the length of a roadway until the General Assembly expressly forbade that result in 2000. We therefore agree with the trial court that the 1988 annexation of portions of Sixes Road and Marble Quarry Road was permitted by the relevant statutes and was not ultra vires as beyond the power granted by statute. We therefore affirm in Case No. A09A0369.

## Case No. A09A0270

3. We disagree, however, with the trial court's conclusion that the city's actions or failures to act in connection with the 1988 annexation invalidated the annexation and prohibited the application of the principles of estoppel.

> Although a municipality or other governmental agency cannot be estopped by its ultra vires acts, there is nevertheless a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power, and the rule is that it may be estopped, as right and justice may require, where the act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized. [Cits.]

*Quillian*, supra, 259 Ga. at 255 (4) (b). Compare *Dukes v. Bd. of Trustees &c.*, 280 Ga. 550, 552-553 (629 SE2d 240) (2006) (board lacked legal authority to disburse benefits to which pensioner never entitled by law). Here, the city's failure to finalize the annexation by adopting the ordinance, preparing a survey, and filing it with the Secretary of State was a mistake or error of omission. It was not an action contrary to the statute which the city had *no power to take*, but "simply making a mistake during an otherwise authorized action under the" statute. *Mullis v. Bibb County*, 294 Ga. App. 721, 725 (2) (669 SE2d 716) (2008). The omission did not destroy the city's

authority or power to complete the annexation, but rather was a defect in the method of exercising a conferred power. See *City of Summerville v. Ga. Power Co.*, 205 Ga. 843, 846-847 (2) (55 SE2d 540) (1949) (city's grant of franchise not ultra vires because of failure to post notice of an application for franchise or publish it in official county gazette).[5]

Accordingly, the trial court erred in holding that the city's failure to follow all the procedural requirements for the annexation constituted an ultra vires act that prevented the city from asserting a claim of estoppel against the county. Since we have determined that the annexation was not ultra vires or void, we conclude that the city properly asserted a defense of estoppel as against the county's attempts to invalidate the 1988 annexation. We therefore affirm that portion of the trial court's decision finding the existence of an estoppel in Case No. A09A0270, reverse that portion finding that the city's actions were ultra vires and void, and remand this case with the direction that the trial court enter summary judgment in favor of the city.

*Judgment affirmed in Case No. A09A0369. Judgment affirmed in part and reversed in part in Case No. A09A0270. Phipps and Bernes, JJ., concur.*

DECIDED JULY 10, 2009 —
RECONSIDERATION DENIED JULY 30, 2009 

*Dyer & Rusbridge, Robert M. Dyer, Samuel J. Rusbridge, Alicia M. Argo*, for appellant.

*Jarrard & Davis, Angela E. Davis, Paul J. Dzikowski*, for appellee.

---

[5] While the county relies on *Adams*, supra, to assert that this annexation was ultra vires and void, that case is inapposite here. In *Adams*, the city sought to annex a roadway, but the 100 percent method applicable here was not available to it, and it could only have proceeded under the 60 percent method. We held that the city's action was ultra vires because it did not employ that method and moreover did not obtain the consent of the State of Georgia, the owner of the roadway. 255 Ga. App. at 454.