A10A0598. CITY OF McDONOUGH v. CAMPBELL.
(696 SE2d 150)

MILLER, Chief Judge.

James Campbell sued the City of McDonough ("City") for breach of his employment agreement ("Agreement"), seeking to recover specified severance benefits and attorney fees under OCGA § 13-6-11. After a trial, the jury returned a verdict in favor of Campbell on his breach of contract claim in the sum of $75,585.80 and found in favor of the City on Campbell's claim for attorney fees. Following the denial of its motion for judgment notwithstanding the verdict ("j.n.o.v."), the City appeals, arguing that the Agreement (i) was unenforceable for failure to include a sufficient description of the place of performance of Campbell's duties; (ii) did not comply with the City's Charter ("Charter") requiring its approval by the mayor

---

and council; (iii) was not entered upon a process of public notice and competitive bid, as required by the Code of Ordinances ("Code"); (iv) violated OCGA § 36-30-3 (a)'s prohibition against binding successor councils; and (v) was inconsistent with the Charter, contrary to OCGA § 36-35-3 (a). Finding that there was some evidence to support the verdict and otherwise discerning no error, we affirm.

> On appeal from a trial court's ruling[ ] on [a] motion[ ] for . . . j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; [a j.n.o.v. is] not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict. In considering a motion for a j.n.o.v., we review the evidence in the light most favorable to the party who won and who opposed the motion. If any evidence supports the verdict, we will affirm the trial court's denial of the motion.

(Citations and punctuation omitted.) *Prime Home Properties v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 702 (3) (660 SE2d 44) (2008).

So viewed, the record shows that in March 2004, Campbell worked for the City as its chief building inspector. On August 15, 2005, the City held a council meeting and passed Resolution No. 05-08-15 ("Authorizing Resolution") authorizing and approving City contracts with specific personnel that it desired "to maintain in its employ . . . to ensure that qualified and experienced employees remain in key positions[.]" The Authorizing Resolution, signed by Mayor Richard Craig, stated that Craig was "authorized to sign the attached contracts" of 11 individuals, including Campbell, and provided that it "shall be entered upon the minutes of the City Council meeting that [Craig] is authorized to sign these contracts on behalf of the City and that said contracts are approved." On September 9, 2005, Campbell and the City entered into the Agreement employing Campbell as the City's building department director. Craig signed the Agreement on the City's behalf. The Agreement provided as follows:

> (a) The [Agreement] shall terminate absolutely and without further obligation on the part of [the] City at the close of the calendar year in which it was executed and at the close of each succeeding calendar year for which it may be renewed.

(b) *The [Agreement] shall be automatically renewed at the end of each calendar year unless positive action is taken by [the] City to terminate the [Agreement].* The positive action required to terminate the [Agreement] shall be a vote by a majority of the [council] of the [City] taken on or before October 30 during the calendar year at the end of which the [Agreement] is to be terminated . . .

(d) *If [the] City elects to terminate this [A]greement as authorized in subparagraph (b) then Employee shall be entitled to thirty (30) days advance notice of termination, plus an amount equal to twelve month[s'] salary at his then current pay rate, as severance pay.* In addition, [the] City shall pay during the thirty (30) day notice period and subsequent twelve month period the necessary premiums to maintain Employee's health insurance benefits . . .

(e) Notwithstanding any of the foregoing provisions, this [Agreement] may be terminated by the City [c]ouncil at any time, for cause. "Cause" shall mean and include gross negligence, intentional acts which are not in the best interests of the City or which interfere with Employee's ability to perform his duties . . .

In the event of termination for cause, Employee shall not be entitled to severance pay unless the City [c]ouncil so directs. . . .

(Emphasis supplied.)

On January 2, 2006, Mayor Billy Copeland, who had served as the City's mayor in a prior term, succeeded Craig in office after his re-election in 2005. On May 15, 2006, the City passed Resolution No. 06-05-15 ("Invalidating Resolution"), which declared existing employment contracts "null and void" and notified the affected employees, including Campbell, that "no such contract, nor any term thereof, shall be renewed." On July 18, 2006, Campbell's counsel sent a written demand to the City, requesting, inter alia, one year's severance pay in the sum of $55,432 and insurance and retirement benefits for one year, pursuant to the Agreement. Campbell's employment continued until August 1, 2006, when the City terminated him.

1. The City argues that the Agreement was unenforceable for failing to describe the place of performance of Campbell's duties with sufficient definiteness. We disagree.

"The nature and character of the services to be performed, the place of [performance,] and the amount of compensation to be paid therefor are all essential elements of an employment contract and must be stated with sufficient definiteness." (Citation omitted.)

*Zager v. Brown*, 242 Ga. App. 427, 430 (1) (530 SE2d 50) (2000).

At trial, Campbell introduced a copy of his Agreement, which listed the employer as City of McDonough and the employee as Campbell, and contained the captions, "State of Georgia" and "County of Henry." The Agreement described Campbell's duties, as "enforc[ing] applicable state building codes, city codes and ordinances . . . [and] render[ing] interpretations of building codes and city codes[,]" among other things. Such contract terms supported the trial court's finding that the Agreement stated with sufficient specificity that Campbell's duties would be performed in McDonough. See *ISS Intl. Svc. Systems v. Widmer*, 264 Ga. App. 55, 59-60 (1) (589 SE2d 820) (2003) (policy of law is against destruction of contracts on the ground of uncertainty "if it is possible in the light of the circumstances under which the contract was made to determine the reasonable intention of the parties") (punctuation and footnote omitted); compare *Sawyer v. Roberts*, 208 Ga. App. 870, 871 (432 SE2d 610) (1993) (employee's three-year contract was unenforceable as it was silent as to the nature of the services to be rendered or the place of employment).

2. The City contends that the Agreement did not comply with the Charter's provision requiring its approval by the mayor and council because a template of Campbell's Agreement was attached to the Authorizing Resolution. This claim of error is waived.

Although the City raised its claim of error relating to noncompliance with the Charter in its motion for j.n.o.v., it failed to raise this claim in its motion for directed verdict. Therefore, this claim is waived. See *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 235 (1) (612 SE2d 17) (2005) ("arguments asserted in a motion for j.n.o.v. but not raised in the motion for directed verdict cannot be considered on appeal") (citations omitted).

3. The City contends that Campbell's Agreement was unenforceable because it was not awarded through a process of public notice and competitive bid, as required by Section 2.20.120 of the Code. We are not persuaded.

"[M]unicipalities are creatures of the legislature[.]" (Citation, punctuation and footnote omitted.) *Rutherford v. DeKalb County*, 287 Ga. App. 366, 368 (1) (a) (651 SE2d 771) (2007). As such, the City's authority with respect to its local government functions, property and affairs is derived from general law, ordinances, resolutions, and its charter. See OCGA §§ 36-34-1 (1); 36-35-3 (a).

Section 2.20.120 of the Code provides:

> The [C]ity shall not enter into a contract involving services or property with any official or employee or with a business

YALE LAW LIBRARY

in which the official or employee has an interest. This section shall not apply in the case of . . .

Contracts entered into with an official or employee, or with a business in which the official or employee has an interest, provided that such contract is:

a. Awarded through a process of public notice and competitive bid; and

b. Disclosure of the nature of such member's interest is made prior to the time a bid is submitted.

It is undisputed that Craig and the council did not engage in a competitive bidding process prior to entering into Campbell's Agreement. Likewise, Copeland and the successor council admittedly did not engage in such process prior to entering into two successive employment contracts with Lester Oliver, Campbell's successor. In denying the City's motion for j.n.o.v. on this ground, the trial court found that the parties were engaged in an at-will employment relationship when the City entered into Campbell's Agreement and held that Campbell's status as a "government employee" arose out of the Agreement.[1] See *Wheeling v. Ring Radio Co.*, 213 Ga. App. 210 (444 SE2d 144) (1994) ("Employment in Georgia is terminable at the will of either party, so an employee has no entitlement to a certain term of employment unless a contract exists therefor.") (citations and punctuation omitted). The trial court reasoned that Section 2.20.120 of the Code was analogous to OCGA § 16-10-6 (sale of real or personal property to political subdivision by local officer or employee) and concluded that both provisions "were intended to prevent self dealing within the government[ ]" such that Section 2.20.120 of the Code did not apply to the Agreement.

Assuming arguendo that the foregoing Code provision applied to Campbell's Agreement, the City is estopped to argue its invalidity where, as here, the City's failure to utilize the competitive bid process was apparently an error or omission. The Charter, enacted by the General Assembly,[2] sets forth the parameters of the City's corporate powers, including its ability to "enter into contracts and agreements with . . . private persons . . . providing for services to be made therefor." § 1.12 (34) of the Charter. The Charter also expressly provides that the City's governing authority is composed of the mayor and six elected councilmen; that the mayor and council have the express authority to establish or alter all nonelective offices,

---

[1] In denying the City's motion for j.n.o.v., the trial court adopted its findings previously entered in its order denying the City's motion for judgment on the pleadings on this issue.

[2] Ga. L. 1981, p. 3387.

positions of employment, and departments and to prescribe the functions and duties for such positions "as necessary for the proper administrati[on] of the affairs and government of [the] [C]ity"; and that the mayor and council shall approve any position classification and pay plan for the City's employees. §§ 2.10, 3.10 (a), 3.17 of the Charter. Given these express grants of authority, including the authority to enter into contracts for positions of employment, the City did not take an action, which it "had no power to take, but [it] simply [made] a mistake during an otherwise authorized action under the [Charter]." (Citation and punctuation omitted.) *City of Holly Springs v. Cherokee County*, 299 Ga. App. 451, 457 (3) (682 SE2d 644) (2009). Such omission "did not destroy the [C]ity's authority or power to [enter into the Agreement], but rather was a defect in the method of exercising a conferred power." Id. at 457-458 (3); *City of Summerville v. Ga. Power Co.*, 205 Ga. 843, 846-847 (2) (55 SE2d 540) (1949) (city's grant of franchise not ultra vires because of failure to post notice of an application for franchise or publish it in official county gazette); compare *Dukes v. Bd. of Trustees &c.*, 280 Ga. 550, 552-553 (629 SE2d 240) (2006) (board lacked legal authority to disburse benefits to which pensioner was never entitled by law). Accordingly, the trial court did not err in denying the City's motion for j.n.o.v. on this ground.

4. The City argues that the trial court erred in finding that Campbell's Agreement did not violate OCGA § 36-30-3 (a)'s prohibition against binding successor councils because it extended beyond Craig's term. We disagree.

Under OCGA § 36-30-3 (a), a city council cannot "bind itself or its successors so as to prevent free legislation in matters of municipal government." This prohibition has been extended to ordinances and contracts entered into by municipal councils. See *Buckhorn Ventures v. Forsyth County*, 262 Ga. App. 299, 302-303 (2) (585 SE2d 229) (2003). In evaluating whether municipal contracts are invalid under this Code section, we consider four questions:

> (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If governmental in nature, is the contract subject to an exception? (3) If not, is the contract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition?

(Footnote omitted.) *City of Powder Springs v. WMM Properties*, 253 Ga. 753, 756-757 (2) (325 SE2d 155) (1985). While Campbell's Agreement was governmental in nature, it fell under an exception to

YALE LAW LIBRARY

OCGA § 36-30-3 (a) because it was authorized by the Charter. See id. at 757 (2), n. 2 ("contracts within the express authority of a city charter are not within the prohibition that one city council may not bind another"); see also §§ 2.10, 3.10 (a), 3.17 of the Charter.

Even were it otherwise, we have held that a municipal government "may make a valid contract to continue for a *reasonable* time beyond the official term of the officers entering into the contract for the municipality." (Citations and punctuation omitted; emphasis in original.) *Unified Govt. of Athens-Clarke County v. North*, 250 Ga. App. 432, 436 (1) (551 SE2d 798) (2001). Since the Agreement would have continued for less than one year following Copeland's election, as it authorized the subsequent council to cancel Campbell's employment upon a vote "on or before October 30 during the calendar year at the end of which the contract is to terminate," it did not improperly bind a successor council and mayor. In executing the agreements with Campbell and the other department heads, Craig and the council only intended to maintain "continuity" and provide a "smooth transition" and "historical knowledge to the incoming council members for a period of time." Therefore, the evidence did not demand a verdict in favor of the City.

5. The City argues that the trial court erred in failing to find that Campbell's Agreement was inconsistent with the Charter because it improperly limited the authority of Copeland and the successor council to establish employment positions and compensation for the City's employees. See OCGA § 36-35-3 (a) ("The governing authority of each municipal corporation shall have legislative power to adopt clearly reasonable ordinances [and] resolutions . . . relating to its . . . affairs[ ] and local government for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto."). Although the trial court held that OCGA § 36-35-3 (a) was inapplicable to Campbell's breach of contract claim, given our holding in Division 1 (d), supra, we find that the City's execution of Campbell's Agreement was consistent with its powers under the Charter and did not improperly bind the successor council and mayor. See OCGA § 36-30-3 (a); see also §§ 2.10, 3.10 (a) and 3.17 of the Charter. Compare *Marlowe v. Colquitt County*, 278 Ga. App. 184, 186 (1) (628 SE2d 622) (2006) (employment agreement was unenforceable to the extent it purported to bind the County to a multi-year contract, inconsistent with the Local Act's provision for annual appointment of county administrator).

For these combined reasons, we affirm the trial court's order denying the City's motion for j.n.o.v.

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED JUNE 14, 2010 —

*Elarbee, Thompson, Sapp & Wilson, Richard R. Gignilliat, Amy S. Auffant*, for appellant.

*Power, Cooper & Jaugstetter, Warren R. Power, Patrick D. Jaugstetter*, for appellee.