BURNS *et al.* v. DECATUR COUNTY.

No. 9696.   FEBRUARY 13, 1934.

*John C. Drake* and *W. V. Custer & Son,* for plaintiffs.

*H. G. Bell,* for defendant.

ATKINSON, J.   Certain citizens of Decatur County filed a petition for injunction against issuance of a part of a series of bonds authorized by an appropriate election for the purpose, alleging that an election was called on December 12, 1925, to be held on January 20, 1926, for the purpose of submitting to the qualified voters of the county whether bonds in the sum of $500,000 should . be authorized for paving highways in said county; that the board of roads and revenues passed and entered on their minutes an order declaring that none of the funds as represented by said issuance of bonds should be expended until and when the same had been matched by the State of Georgia and the Federal government, so that 25 per cent. would be furnished by the County of Decatur out of the funds arising from the sale of said bonds; that $345,-000 of the bonds had been sold, and the money arising from the sale had been used indiscriminately on Federal highways, without being matched by the State and Federal governments, in violation of the pledge of the board of roads and revenues of Decatur County, and there remained unexpended $155,000, represented by bonds falling due in the years 1950-1955; that said bonds had not been signed by duly authorized officers of the board of roads and revenues, and had not been certified by the clerk of Decatur superior court; that it was the policy of the legislature of Georgia to provide a refund of all such appropriations as had been made by the several counties of the State prior to September 1, 1931, as evidenced by a constitutional amendment submitted to the people at the November election, 1932; that to allow the expenditure of the remaining $155,000 in bonds would be outside the provision made by the legislature, and would be contrary to the policy of the State, as evidenced by its highway laws and by the appropriation for the gasoline sale-tax for the construction of roads in the several counties of the State; that there was no present need for the construction of any highways in the County of Decatur and lying outside of the State-aid highways in the county; that said funds were voted for the specific purpose of constructing highways, that no part of said bond issue can be legally used except for the purpose of paving, and the plaintiffs are opposed to allowing said sum to be used in conjunction with

any State or Federal aid project, in view of the pronounced policy of the legislature; that the issuance and sale of the bonds would settle a heavy unnecessary burden upon taxpayers of Decatur County, and that in the election there were 1759 votes "for $500,-000 bonds for paving," and 306 votes "against $500,000 bonds for paving." The plaintiffs prayed that the defendant be enjoined from issuing or selling the bonds.

By amendment it was alleged that since the filing of the petition the people of Georgia had adopted the constitutional amendment referred to above; that the resolution adopted by the board of roads and revenues contemplated paving only such roads as were a part of the State highway system enjoying State and Federal aid; that the bonds were voted by the people on the assurance of the board of roads and revenues that the indebtedness so authorized would be used only on Federal-aid highways, that it is contemplated by the board of roads and revenues to sell the remaining $155,000 unused bonds for grading and preparing certain roads in Decatur County which are a part of the highway system, without such money being matched by the highway department and any aid of said highway department, in violation of the purpose for which the bonds were authorized, that such issuance of bonds in said manner would be in violation of the constitution, article 7, section 6, paragraph 1; and that the tax digest of property in Decatur County amounts to $6,067,059, and to allow the sale of said bonds now would be violative of the constitution, article 7, section 7, paragraph 1.

A general demurrer was sustained and the petition was dismissed.

■ The only legal construction of the petition as amended is that there was submitted to the voters of Decatur County the proposition of issuing "$500,000 bonds for paving." An election properly called for the purpose of voting upon this question resulted in an approval by the voters of the issuance of these bonds. There was not included in the submission any condition, or any assurance as to how the money should be spent, excepting it should be spent for paving the roads of Decatur County. When the people voted they did not condition their support of the bond issue upon any representation contained in the submission, and any aliunde statement by members of the board of roads and revenues

in no wise affected the validity of the vote for bonds, nor did the assurances of such board afford any ground of relief against the use of the bonds for the purpose stated in the submission, after the election had carried. This question has been dealt with in two cases. In *Epping* v. *Columbus,* 117 *Ga.* 263, 285 (43 S. E. 803), it was said: "It is contended that the bonds should not have been validated, because at least thirty-two negro voters who voted in favor of the issuance of bonds were induced to do so by false and fraudulent statements made to them by officers of the town and others interested in the issuance of the bonds. This is no ground for refusing to validate the issue of the bonds. The courts can not inquire into the motives prompting persons to vote on questions of this character, where the voter freely and voluntarily exercised his right. Inducements held out to influence a voter, although false and fraudulent, will not invalidate the election. . . Where the election is regularly called and regularly held, and the voters freely and voluntarily exercise their right to vote, the election will not be invalidated simply because some of them may have been misled by some one interested in the result of the election." A similar question arose in *Ward* v. *State Highway Board,* 172 *Ga.* 414 (157 S. E. 328). A suit was filed to enjoin proposed action of the board of commissioners of Houston County to change the location of a highway route. This court said: "The salient points raised by the petition are as follows: That the people of Houston County voted for the issuance of $200,000 of·bonds for the construction of roads in Houston County, based on the promise and assurance that the proceeds of the bonds would be used exclusively in the construction of permanent roads of concrete," etc. This court held, adopting the opinion of the trial court: "I do not think that the courts have any power to control the discretion vested in the State Highway Board, unless it is shown that this discretion is grossly abused. I do not think, in the contemplation of the evidence in this case, that it can be said that there has been a gross abuse of discretion. It is a matter of peculiar jurisdiction of the board; and unless the proposed action is so arbitrary, capricious, and unreasonable as to be without any foundation of reason, no court should undertake to substitute its judgment for that of the board to which the matter is committed by law. What has been said above as to the

discretion and power of the State Highway Board applies fully to all questions of selecting and constructing all routes, materials, and all matters of expense incident to the construction of State highways. The same thing is also true as to the exercise by county commissioners of functions committed to them by law." So, although the petition set forth that the people of Houston County voted for certain bonds on the assurance that roads of a certain material should be built, nevertheless this court held that the questions of roads, materials, etc., were within the discretion of the county commissioners.

■ The next contention of the plaintiffs is that the policy of the State regarding the paving of roads and the reimbursement of counties was changed by the constitutional amendment cited above, and by legislative enactment, and that now Decatur County can not receive the Federal and State aid it anticipated when the bonds were voted. All of these were risks which the voters ran when they voted for the issuance of the bonds. The cost of materials might have increased fourfold. A court-house might have been burned, and it might tax the resources of the people to reconstruct it, and many other unexpected conditions might have arisen. The State has placed strong limitations about the issuance of bonds, and such indebtedness can be incurred only by a two-thirds vote of the qualified voters. This makes the adoption of indebtedness difficult, since it is recognized that the creation of debt is easy and its satisfaction oftentimes harsh and oppressive. When the people of Decatur County voted for the bonds there was included in the submission no condition that help should be received from the Federal Government or from the State Government; and so far as their action showed, they were willing to bear the burden alone. Within the discretion of the board of roads and revenues any of the highways of the county could be paved; and therefore the constitutional amendment approved in November, 1932, which limited aid to those contracts that had been made up to September 1, 1931, and the act of the legislature (Ga. L. 1933, pp. 172-174) do not affect the situation. Therefore this position of the plaintiffs is untenable.

■ The further position of the plaintiffs is that after the election authorizing the bonds the reduction of assessed values was such that the debt of $500,000 arising from the bond issue would be

in excess of 7 per cent. of the assessed value; and $345,000 of the bonds having been issued, the issuance of the remaining $155,000 would make the debt limit above the 7 per cent. permitted by the constitution. This position can not be sustained. Necessarily the validity of the bonds with regard to 7 per cent. of the assessed values of the county is determined as of the date of the election. If any other construction were adopted, the result might be disastrous. Suppose a bond issue were carried under an election in September for the purpose of erecting a court-house, and the court-house was two thirds completed, some of the bonds not having been sold, but awaiting the progress of the work. The succeeding year a depression occurred, so that the entire bond issue would be in excess of 7 per cent. Must the court-house be left one half or two thirds finished? The same reasoning would apply to a bridge half constructed, or a road half built. All of these possibilities were contemplated by the framers of the constitution, and they placed such restrictions around the imposition of bonds that unless two thirds of the voters were in favor of the bonds in amount, as specified in the submission for election, the mortgage could not be put upon the county. Therefore the bond issue must be considered in its entirety as of the date it was authorized by an election called for the purpose.

◼ The plaintiffs in their petition pray that the board of roads and revenues be enjoined from issuing or selling said described bonds; and in their amendment they strike any prayer for cancellation, and pray for "an injunction perpetually enjoining defendants and their successors in office from selling said bonds, or from having same certified." The prayer is, not for an injunction preventing the *illegal use* of the proceeds of the bonds, but to enjoin the issuance of the bonds. The amendment to the constitution, adopted in 1932, provides that "the indebtedness of the aforesaid political subdivisions of this State shall be evidenced by the certificates of indebtedness issued or to be issued by the State Highway Department of Georgia for the cost of the construction and/or paving by any county of the State, as well as any highway district created by law, of any public road or highway (also bridges) ; and provided further, that such construction and/or paving was done or contract or agreement made for same to be done prior to September 1, 1931." Ga. L. 1931, p. 97. The act of

1933 (Ga. L. 1933, p. 174, sec. 6) provides: "But no county funds, including funds arising from the 1¢ gas tax now appropriated to the counties by law, shall be appropriated or used in any manner whatsoever for the establishment or construction of said highways. It is the purpose of this act to prohibit county participation in the cost of establishment or construction of State roads; provided that it is not the purpose of this act to prohibit any county from contracting with the State Highway Department for the construction of any portion of the State-aid road system now permitted or which may be permitted by law." It was not prayed that the board of roads and revenues should be enjoined from violating the above act, but only that they should not be allowed to issue bonds which the people ordered to be issued or permitted to be issued within the $500,000 limit. It is not to be presumed that the board of roads and revenues would violate the legislative act, but they are authorized to use the money as provided in the call for election for bonds. The plaintiffs' brief calls attention to the burden of taxation that will fall upon the people, and to the disastrous results from the issuance of bonds. The courts are not concerned in the results which follow the free action of counties in placing burdens of debt upon themselves. These are not questions with which courts can deal. They can only enforce the law as written, and enforce bonded indebtedness when assumed by the people of a county in accordance with the constitution and laws of the State.

*Judgment affirmed. All the Justices concur.*