A01A0724. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY v. NORTH et al.
(551 SE2d 798)

POPE, Presiding Judge.

As part of a land purchase contract with Carlton North, the Unified Government of Athens-Clarke County agreed to build a new

access road to its Cedar Creek water treatment plant. The road would eliminate the need for plant-related traffic to drive through a residential area being developed by North. When the Unified Government failed to construct the access road in a timely manner, this breach of contract action against the Unified Government followed, and a jury awarded damages and attorney fees to North, Belle Meade Plantation, Inc., and C. R. North Development, Inc. After the denial of its motions for a judgment notwithstanding the verdict and for a new trial, the Unified Government appeals, raising issues regarding the validity of the Unified Government's obligation to build the access road and the measure of damages, among other things. Because we find no merit in the Unified Government's enumerations of error, we affirm.

Viewing the evidence in the light most favorable to the jury's verdict, North owned 562 acres of land adjacent to the Cedar Creek water pollution control plant in Athens-Clarke County. North planned to develop the land as a residential project called the Belle Meade subdivision. After North had obtained the required governmental approvals, he began to develop the subdivision and had completed the first house, when he learned that the Unified Government was considering the Cedar Creek facility as the location of its regional water treatment plant. Through his attorney, North informed the Unified Government that an expansion of the water treatment facility would destroy the Belle Meade project, and that he would consider such an expansion to be an inverse condemnation of his property. North demanded that the Unified Government purchase all of his land adjacent to the Cedar Creek facility, but the Unified Government agreed to buy only a 452-acre portion of the 562-acre tract. As part of the sales agreement, the Unified Government agreed to construct a new access road to the water treatment plant within 18 months of the real estate closing. The access road would divert plant-related traffic from the land retained by North. On May 3, 1994, the Unified Government approved the land purchase and resolved that as part of the terms of purchase, "Athens-Clarke will commit to the construction of a new access roadway from Barnett Shoals Road to the plant site within 18 months." The contract was signed on August 8, 1994, and closing occurred on August 9, 1994.

Aside from the transfer of the property and the construction of the access road, the sale agreement provided for certain other additional obligations. These additional obligations included, on the part of North, payment of $122,000 for reimbursement to the Unified Government of the value of the road within the portion of the property retained by North, and payment by the Unified Government of up to $121,230.21 to reimburse North for the cost of improvements to the land sold. After the sale, North was obligated to change the county

road traversing the development to a cul-de-sac. The Unified Government was obligated to erect a fence on the cul-de-sac and to block all traffic unrelated to the water treatment plant. North honored all of his post-closing obligations.

Evidence shows the Unified Government department entrusted with completing the road construction purposely delayed starting the project because other matters were more pressing. Although the access road was required to be completed by February 9, 1996, the Unified Government did not solicit and receive bids on the project until February 1, 1996. Once bids were received, the earliest the road could be completed was eight months later. Bids were presented to the commissioners on April 2, 1996, for approval, but they declined to move forward with construction. The Unified Government received bids again on February 20, 1997, and the access road construction began in the spring of 1997. By that time North had sold his interest in the Belle Meade property.

North filed this breach of contract action against the Unified Government on April 24, 1997. The case went to the jury in October 1999, and they returned a verdict in favor of North, including an award of compensatory damages and attorney fees.

1. The Unified Government claims that its agreement to build the access road was ultra vires and void and that the trial court erred by refusing to grant its motion for summary judgment on that basis. The Unified Government is authorized to open roads under its charter, see Ga. L. 1990, p. 3560, §§ 1-104 and 8-114, and there is no question that the contract was approved by the then existing commission and was properly executed and delivered on behalf of the Unified Government. However, the Unified Government claims that the contract violates OCGA § 36-30-3 (a), which provides: "One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." This prohibition has been extended to contracts as well as ordinances and to counties as well as municipalities. See *City of Powder Springs v. WMM Properties*, 253 Ga. 753, 756 (2) (325 SE2d 155) (1985). The statutory prohibition is taken from *Williams v. City Council of West Point*, 68 Ga. 816 (1882): "A municipal corporation may bind itself by, and cannot abrogate, any contract which it has the right to make under its charter, but one council cannot, by ordinance, bind itself and its successors to a given line of policy, or prevent free legislation by them in matters of municipal government."

The Unified Government argues that the road construction was a governmental matter and that one commission could not bind a subsequent commission to complete the road, especially where the future commission would be required to appropriate funds and to solicit bids from contractors in order to complete the project. They

also point out that the 18-month period allowed for the road construction extended beyond the term of the commissioners who approved the contract.

The trial court denied the Unified Government's motion for summary judgment, finding that the agreement did not improperly bind the successor commission so as to prevent free legislation in matters of municipal government. We agree. OCGA § 36-30-3 (a) does not prevent a contract from extending beyond the term of the commission in office at the time of execution.

> If the rule of [OCGA § 36-30-3 (a)] be too rigidly applied, there would be few contracts which municipalities in this State could legally enter into, since contracts, by definition, must be binding, and many of them, to be practical and effective, must extend beyond the existing councils' terms because of the nature of their subject matter.

*Jonesboro Area Athletic Assn. v. Dickson*, 227 Ga. 513, 518 (1) (b) (181 SE2d 852) (1971). The more recent case law has tended to loosen the strict construction given to OCGA § 36-30-3 (a) in the past.

> Cases . . . indicate that a council may bind itself although it may not bind its successors. It was also held that a future council may be bound by the terms of a contract if that council either approves the terms of the contract or ratifies it. Increasingly, cases have made a distinction between contracts made by a municipality in the exercise of its proprietary function as opposed to its governmental function, the courts allowing more flexibility in contracting in connection with the proprietary functions of a municipality. There is some indication that the question of whether the contract involves a financial obligation on the part of the municipality should be considered in addition to the question of whether the proprietary or governmental functions are involved.

(Citations omitted.) *Brown v. City of East Point*, 246 Ga. 144, 145 (268 SE2d 912) (1980). There are a number of ways in which a contract can be found not to violate the statutory restrictions:

> Consideration of whether municipal contracts are subject to the prohibition of OCGA § 36-30-3 (a) involves at least 4 questions: (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If governmental in nature, is the contract subject to an exception? (3) If not, is the con-

tract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition?

(Footnote omitted.) *City of Powder Springs v. WMM Properties*, 253 Ga. at 756-757 (2).

The Unified Government's decision to commit to construct the access road was governmental, but once the commitment to build had been made the subsequent steps in completing the project can be viewed as within the proprietary function of the Unified Government. See *Jackson v. City of Rome*, 182 Ga. 848, 855-856 (187 SE 386) (1936). See also *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 837 (165 SE2d 141) (1968) (the safe construction and maintenance of a street is within a municipality's corporate powers rather than its governmental powers). When the commission entered into the contract with North, it did not bind future commissions in governmental matters, and so did not violate the prohibition of OCGA § 36-30-3 (a). See *City of Powder Springs*, 253 Ga. at 758 (OCGA § 36-30-3 (a) is not applicable to the proprietary functions of local government). However, if the obligation to build the access road is considered to remain a governmental matter, the length of the contract and the actions of the succeeding commission support a finding that the agreement was valid and binding on the subsequent governmental body. The contract requires performance within a limited time: "The weight of authority sustains the doctrine that a municipal corporation may make a valid contract to continue for a *reasonable* time beyond the official term of the officers entering into the contract for the municipality." (Punctuation omitted; emphasis in original.) *Jonesboro Area Athletic Assn.*, 227 Ga. at 518 (1) (b); *Bd. of Commrs. v. Chatham Advertisers*, 258 Ga. 498, 500 (2) (371 SE2d 850) (1988). Furthermore, the access road was eventually built, and the Unified Government realized the entire extent of its bargain under the agreement, indicating that the subsequent commission ratified the obligation to build the road. See *DeKalb County v. Ga. Paperstock Co.*, 226 Ga. 369 (174 SE2d 884) (1970), but contrast *Horkan v. City of Moultrie*, 136 Ga. 561, 563 (71 SE 785) (1911).

The Unified Government also points to OCGA § 36-60-13, which provides that a city or county multi-year purchase contract for goods or services must be subject to annual termination by the city or county. "But . . . the Code section is intended to prohibit the creation of a county or municipal debt in excess of one year." *Abedi v. City of Atlanta*, 244 Ga. App. 562, 563 (1) (c) (536 SE2d 255) (2000). The commitment to build a road within 18 months is not a long-term debt obligation and is not prohibited by OCGA § 36-60-13. Inasmuch as the contract with North was not ultra vires by reason of a violation of

OCGA § 36-30-3 (a) or § 36-60-13, we find that the trial court did not err in denying the Unified Government's motion for summary judgment.

2. The Unified Government argues that the trial court erred in failing to grant the Unified Government's motion for j.n.o.v., because no evidence before the jury was sufficient to allow a finding that the damages sought were such as were contemplated by the parties as a result of the subject breach. "A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Carden v. Burckhalter,* 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994).

"Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. The Unified Government argues that the parties only contemplated damages to North if there was a change in use in the treatment plant; and the plant has not been expanded to a regional facility. The Unified Government refers to testimony that shows that North suffered damages due to a public perception that traffic through the proposed subdivision might increase due to the regional sewer facility and notes that there is no evidence that there was such an increase in traffic. The Unified Government maintains that therefore North suffered no damages that were contemplated by the parties at the time of contracting.

But evidence shows that the parties intended the access road to eliminate plant-related traffic from passing through the Belle Meade residential development, not just to avoid increased traffic due to an expansion of the plant. Indeed, the Commission Agenda Item presented to the Athens-Clarke County Commission for its May 3, 1994 executive session concerning approval of the contract stated that "It is the staffs' opinion that . . . *eliminating* truck traffic through a residential neighborhood would be highly desirable in eliminating future problems at the Cedar Creek Plant site." (Emphasis supplied.) Regardless of the Unified Government's motivation, this statement is evidence that it knew the goal was to eliminate plant-related traffic. These facts distinguish the cases cited by the Unified Government. We find that it was reasonable to anticipate that failure to build the access road would adversely affect the value of the Belle Meade development, regardless of whether the Cedar Creek facility was expanded. The evidence does not demand a finding that damages sought were not contemplated by the parties at the time of contract, and the trial court did not err in denying the Unified

Government's motion for a j.n.o.v. on this basis.

3. The Unified Government claims the trial court erred in failing to grant its motion for j.n.o.v. with regard to the jury's award of attorney fees for bad faith, as the verdict was contrary to public policy and legislative intent. They argue that the Unified Government's failure to accept a bid to construct the road in April 1996 was based on the bids being too high. North points out that even if the Unified Government had accepted a bid, the access road could not have been completed in accordance with the terms of the contract because the road was required to be completed in February 1996.

Expenses of litigation are recoverable "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." OCGA § 13-6-11. Counties are not protected from expense of litigation claims. See *Eastern Air Lines v. Fulton County*, 183 Ga. App. 891, 895 (4) (360 SE2d 425) (1987).

> Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in defendant's carrying out the provisions of the contract, that is, in how defendant acted in his dealing with the plaintiff. Bad faith other than mere refusal to pay a just debt is sufficient, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. So defendants can be held liable for attorney fees if they committed the breach in bad faith.

(Citations and punctuation omitted.) *Plemons v. Weaver*, 243 Ga. App. 464, 466 (2) (533 SE2d 747) (2000). Evidence would support a finding that the Unified Government chose to delay construction of the access road so that the staff could attend to "day-to-day" matters, which they deemed to be more pressing, all without telling North, and so it purposefully breached the contract with North. The trial court did not err in denying the Unified Government's motion for j.n.o.v. with regard to the award of attorney fees.

4. The Unified Government argues that the trial court erred by refusing its request to amend the pre-trial order to show lost profits as the proper measure of damages for breach of contract. They also claim the trial court erred in charging the jury over exception that the proper measure of damages for breach of contract in this case was diminution in the fair market value of property before and after the breach, as opposed to lost profits.

"The general rule for the measure of damages involving real property is the diminution of the fair market value of the property

and/or the cost of repair or restoration, but limited by the fair market value at the time of the breach or tort." *Ryland Group v. Daley*, 245 Ga. App. 496, 502 (7) (537 SE2d 732) (2000).

The evidence authorizes a charge based on diminution of value. North presented expert testimony that the houses he developed in the Belle Meade subdivision dropped in value from $81.26 a square foot to $68.23 a square foot due to the Unified Government's failure to complete the access road, which would have established a self-contained subdivision. North also presented the testimony of home purchasers Matheson and James who stated that they had been unwilling to pay more for their houses in the Belle Meade subdivision because of the uncertainty of their value if the Unified Government did not reroute its trucks to a separate road as promised. The evidence would authorize the jury to find that North's property diminished in value because the Unified Government failed to complete the access road as required by its agreement.

The Unified Government's reliance on *Darlington Corp. v. Evans*, 88 Ga. App. 84 (76 SE2d 72) (1953), is misplaced. The plaintiff in *Darlington Corp.* sued for breach of an employment contract, but rather than ask for damages in the form of lost wages, he only claimed special damages resulting from being forced to sell certain property at less than fair market value in order to come to Atlanta and take the job with defendant. We found these damages could not be attributed to any action on the part of defendant and were not recoverable as a matter of law. Unlike *Darlington Corp.*, North's damages can be directly traced to the alleged breach of contract.

The Unified Government argues that the case of *Paul v. Jones*, 160 Ga. App. 671 (288 SE2d 13) (1981), shows that diminution in fair market value of North's property was not the proper measure of damages. *Paul* involved a breach of contract action against a contractor for failure to properly construct a road in a residential subdivision. However, the holding in *Paul* is that the trial court did not err in instructing the jury not to consider the diminution in the value of the road itself because the road had been dedicated to the county by the plaintiff. See id. at 673 (1). *Paul* does not control whether diminution in value is the correct measure of damages under the facts presented here.

The court in *Paul* stated that the issue of the diminution of the fair market value of the plaintiff's lots contiguous to the road had been allowed to go to the jury, see *Paul*, 160 Ga. App. at 673 (1), and so North also relies on *Paul*. But we agree with the Unified Government that that issue was not the subject of the appeal in *Paul* and is not binding. Nevertheless, we find the trial court here did not err by instructing the jury that the measure of damages was the diminution in fair market value of North's property. The evidence shows a dimi-

nution in value of property, and it is not necessary to prove damages by lost profits where loss in value can be shown. See *Whitfield v. Dept. of Transp.*, 248 Ga. App. 172, 174 (2) (546 SE2d 308) (2001).

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JULY 5, 2001 — ■■■■■■■

*Ernest De Pascale, Jr., Ellen W. Hight,* for appellant.

*Lancaster & McKillip, Douglas C. McKillip, Cook, Noell, Tolley, Bates & Michael, J. Vincent Cook, Jason B. Green,* for appellees.