## A02A1305. GEORGIA NORTHEASTERN RAILROAD COMPANY, INC. v. LUSK.
### (574 SE2d 810)

MIKELL, Judge.

Georgia Northeastern Railroad Company, Inc. (the "Railroad") appeals from the denial of its motion for judgment notwithstanding the verdict (j.n.o.v.) in Larry Lusk's action to recover damages based on the erosion of his property caused by the accumulation of debris beneath a trestle owned by the Railroad. The jury found that the Railroad had committed a continuing, abatable nuisance and trespass and awarded Lusk $5,400 in compensatory damages, representing the diminution in the fair market value of his land; $182,755 for the estimated cost of repair; and $74,238 in litigation expenses. On appeal, the Railroad contends that the trial court erred by (1) denying its motion in limine to exclude evidence of restoration damages; (2) denying its motions for directed verdict and j.n.o.v. on the issue of compensatory damages because a portion of the injury occurred outside the four-year statute of limitation; and (3) denying its motions for directed verdict and j.n.o.v. on the issue of Lusk's entitlement to attorney fees under OCGA § 13-6-11. We affirm the awards of compensatory and restoration damages but reverse the award of attorney fees.

Appellate review of the denial of a motion for j.n.o.v. is governed by the "any evidence" test.[1]

> In determining whether the trial court erred by denying defendant's motion for a directed verdict and motion for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[2]

Viewed in the light most favorable to the verdict, the evidence shows that Lusk owns 94.92 acres of land zoned for agricultural use in Cherokee County[3] and that part of his property line extends to the center of the Etowah River. The Railroad operates a railroad line that crosses over Lusk's land, and Lusk owns 12.5 acres down river from the railroad trestle. Lusk testified that beginning in 1987, he noticed an accumulation of dead trees, shrubs, and similar debris on his

---

[1] *Ledee v. Devoe*, 250 Ga. App. 15 (549 SE2d 167) (2001).

[2] (Citation omitted.) *Trammell v. Whetstone*, 250 Ga. App. 503 (552 SE2d 485) (2001).

[3] Lusk testified that he uses the property for pastures, hay fields, and recreation.

property on the upstream side of the trestle. Because the debris was diverting the water about 30 or 40 degrees east, Lusk contacted the Railroad, which removed the debris regularly through 1989.

In 1990, the Railroad was sold to a group of investors. Thereafter, Lusk testified, the Railroad failed to respond to repeated requests to remove the debris. Meanwhile, according to Lusk, the diversion of the water caused by the debris, which he described as ten to twelve dump trucks' worth, caused his property to erode. Finally, in August 1993, after receiving a letter from Lusk's attorney, the Railroad removed the debris. The railroad did not clear the debris again until August 1995, five months after Lusk filed suit. According to Lusk, that was the last time the Railroad removed the accumulation until the day before trial, which began on October 16, 2000.

Lusk's expert witness, Charles B. Wilson, a soils engineer, testified that the accumulation of the debris diverted the flow of the river and increased its velocity, causing the erosion of Lusk's property. He further testified that the erosion stripped the riverbank bare of vegetation, making it more susceptible to future erosion even if the debris is removed regularly. Accordingly, Wilson concluded that approximately 450 feet of Lusk's property along the riverbank needed to be stabilized to prevent further erosion. John T. Vermont, an environmental scientist, testified that any stabilization project would require a "wetland permit" from the U. S. Army Corps of Engineers, which would, in turn, require the approval of the U. S. Fish and Wildlife Service due to the presence of endangered species of fish in the Etowah River. Based on Vermont's opinion as to what federal regulators would find acceptable, Wilson projected costs of repair ranging from approximately $837,000 to $972,000.

Albert G. Holler, Jr., an expert in hydrologic engineering, testified on behalf of the Railroad that in his opinion, the debris did not cause the erosion. He attributed the erosion to rainfall and flooding, as well as the shape and configuration of the river. Robbin Sotir, a soil bioengineer, or land stabilization expert, testified that the accumulation of the debris was an "extremely small factor" in the erosion. In addition, Sotir disputed Wilson's cost projections, estimating that it would cost $182,755 to shore up the riverbank. The jury awarded precisely this sum in restoration damages to Lusk.

1. The Railroad contends that the trial court erred in denying its motions for directed verdict and j.n.o.v. on the ground that the action was barred by the four-year statute of limitation applicable to actions for trespass to realty.[4] The Railroad claims that Lusk's property was permanently damaged by a flood in 1990, which started the running

---

[4] OCGA § 9-3-30 (a).

of the limitation period, and that Lusk's suit, which was filed in 1995, was time-barred. In addition, the Railroad asserts that no attempt was made to distinguish between damages sustained in 1990 and those occurring within the statute of limitation, rendering the jury's award speculative. We disagree with these contentions and hold that there is evidence to support the jury's verdict that Lusk suffered a continuing, abatable nuisance or trespass.

A continuing nuisance "is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it."[5]

> Every continuance of a nuisance which is not permanent, and which could and should be abated, is a fresh nuisance for which a new action will lie. Consequently suit may be maintained for damages growing out of a nuisance of the character indicated, where the damages were inflicted within four years before the time of filing suit, though the act which originally caused the nuisance was not done within the period of limitation of the action.[6]

Lusk testified that on March 17, 1990, the river rose to within a few feet of the bottom of the trestle; that the Railroad had allowed debris to pile up; that after the water receded, he noticed erosion on the eastern side of his property downstream from the trestle; and that although floods had previously occurred, they had never before caused erosion. Lusk testified in detail concerning the method he utilized and the sums he expended to repair the damage caused by the flood. According to Lusk, the method he used seemed to be effective, although he feared that another flood would wash out the area. Lusk testified that his property continued to erode in 1991 because every time the water rose and struck the debris pile, it diverted the river flow to the east at a 30-degree angle, causing the water to shoot directly onto his property. Finally, Lusk testified on cross-examination that the erosion began in 1990 and continued periodically after he repaired the riverbank, causing substantial property loss. In addition, expert witness Wilson testified that the erosion was caused by the increased velocity of the water that was attributable to the accumulation of debris over several years.

The testimony of Lusk and Wilson provided evidence from which the jury could conclude that the damage to Lusk's property sustained in the 1990 flood had been repaired and that the continued diversion

---

[5] *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897).

[6] (Citations and punctuation omitted.) *West v. CSX Transp.*, 230 Ga. App. 872, 873 (2) (498 SE2d 67) (1998).

of the water caused by the accumulation of the debris created a continuing, abatable nuisance or trespass. Moreover, the jury was thoroughly instructed on the distinction between a permanent trespass and a continuing nuisance, including the fact that it could not award damages for any injury occurring more than four years before suit was filed. Accordingly, we find evidence to support the verdict, and the trial court did not err in denying the Railroad's motions for directed verdict and j.n.o.v. on this issue.

2. We next address the Railroad's contention that the trial court erred in admitting evidence of the cost to repair the property. The Railroad argues that the proper measure of damages in this case is the diminution in the fair market value of the land before and after the injury.

"As a general rule the measure of damages in actions for injuries to real property is the difference in value before and after the injury to the premises. The only exception is when there is a more definite, equitable and accurate way by which the damage may be determined."[7] In addition, "the cost of repair often has been held to be an appropriate measure of damages in cases involving a continuing nuisance or trespass."[8] In *Southern Mut. Investment Corp. v. Langston,*[9] for example, landowners sued a neighboring apartment complex, alleging it caused excessive water runoff into the stream bordering their properties, thereby eroding the plaintiffs' stream banks. The plaintiffs introduced expert testimony that the problem could be solved by a culvert, and the verdict of $2,000 for each of the four plaintiffs for repair of the property was deemed "a realistic equitable method of assessing the damages."[10]

Here, too, there is evidence to support the jury's finding that the cost of repair was equitable under the circumstances.[11] Dr. Holler, the Railroad's expert, testified that the erosion would continue and that the stabilization option proposed by Wilson "would armor most any-

---

[7] (Citation and punctuation omitted.) *Southern Mut. Investment Corp. v. Langston,* 128 Ga. App. 671, 674 (6) (197 SE2d 775) (1973); accord *Payne v. Whiting,* 140 Ga. App. 390, 391 (2) (231 SE2d 796) (1976) (cost to repair damage to plaintiff's pond caused by runoff water held recoverable).

[8] (Punctuation omitted.) *Sumitomo Corp. of America v. Deal,* 256 Ga. App. 703, 708 (4) (569 SE2d 608) (2002), citing *Kiel v. Johnson,* 179 Ga. App. 43 (345 SE2d 131) (1986) (physical precedent only); *Raymar, Inc. v. Peachtree Golf Club,* 161 Ga. App. 336, 337 (2) (B) (287 SE2d 768) (1982); *Southern Mut. Investment Corp.,* supra.

[9] Supra.

[10] Id. at 675 (6).

[11] We note that the trial court, as requested by the Railroad, charged the jury that "in order for the Plaintiff to recover the costs of repair for injury to his land, you must first find that . . . this measure of damages is equitable under the circumstances presented. If you do not find the cost of repair equitable, then you shall only award the Plaintiff damages for the diminution in fair market value of his land."

where." The jury discounted the cost estimates suggested by Wilson and instead awarded the sum calculated by the Railroad's land stabilization expert, Sotir. Neither of the defense expert witnesses testified to a more cost-effective method of restoring the riverbank. "[W]here the cost of repair is an 'equitable and accurate way by which the damage may be determined' it is not error to allow such evidence, and to base the verdict thereon."[12]

The Railroad argues, however, that the award for the cost of repair must be reversed because it is disproportionate to the value of the injured property. It contends, based on the following principle, that restoration damages can only be awarded if they are proportional to the diminution in value of the land:

> As a general rule the measure of damages in actions for injuries to real property is the difference in value before and after the injury to the premises. . . . In some cases the cost of repair or restoration has been adopted as the measure of damages [cits.]; but in such event the cost of repair must be reasonable and bear some proportion to the injury sustained.[13]

But the cases cited by the Railroad do not involve a continuing, abatable trespass or nuisance; rather, they involve permanent damage to improved property. For instance, *Mercer v. J. & M. Transp. Co.*[14] involved a claim for damage to a residence caused by a truck that veered off a street and into the home. In *Ryland Group v. Daley*,[15] plaintiffs were limited to recovering the actual cost to repair defects in their home. Restoration damages were not at issue in *Unified Govt. of Athens-Clarke County v. North.*[16] Rather, that case concerned damages awarded for diminution in property value based on the breach of a contract to construct an access road to a water treatment plant.[17] These cases, therefore, are inapposite.

---

[12] *Payne*, supra, citing *Southern Mut. Investment Corp.*, supra; see also *Myers v. Arnold*, 83 Ill. App.3d 1, 7-8 (403 NE2d 316) (1980) (diminution in market value measure of damages "may be painfully inadequate . . . [to] protect plaintiffs' legitimate interest in the use and enjoyment of their property"); accord *First Baptist Church of Lombard v. Toll Hwy. Auth.*, 301 Ill. App.3d 533, 544-546 (703 NE2d 978) (1998) (establishing test for application of cost of repair measure of damages).

[13] (Citations omitted.) *Empire Mills Co. v. Burrell Engineering &c. Co.*, 18 Ga. App. 253, 256 (89 SE 530) (1916); accord *Ga. R. &c. Co. v. Flynt*, 93 Ga. App. 514, 524 (6) (92 SE2d 330) (1956).

[14] 103 Ga. App. 141 (118 SE2d 716) (1961).

[15] 245 Ga. App. 496, 502 (7) (537 SE2d 732) (2000); accord *Song v. Brown*, 255 Ga. App. 562 (565 SE2d 884) (2002) (insufficient evidence presented to show that home's roof and windows needed to be replaced).

[16] 250 Ga. App. 432 (551 SE2d 798) (2001).

[17] Id. at 439 (4).

The only continuing nuisance case cited by the Railroad is *Louisville &c. R. Co. v. Hughes.*[18] There, a landowner sued to recover damages based on certain blasting operations performed on behalf of a railroad, during which rock and other debris were embedded in his property. In addition, the plaintiff claimed the railroad had diverted water "so as to cause it to pond upon the plaintiff's land, or to seep into it in such a way as to diminish its value."[19] The plaintiff sought to recover the cost of removing the rock as well as the diminution in the value of the land caused by the diversion of the water. Our Supreme Court held that "if there was more than one element of damage to the land, . . . the jury should be instructed that in no event could the damages to be recovered exceed the value of the land."[20] In the instant case, Lusk testified that in his opinion, which was based on his 25 years of experience dealing in real estate in Cherokee County, the value of his land was between $8,000 and $10,000 per acre. He also testified that he owns 94.92 acres. Thus, according to the evidence presented at trial, the value of Lusk's land is between $759,360 and $949,200. The damages awarded for the cost to repair the land, $182,755, do not exceed its value. It follows that the trial court did not err in refusing to set aside the award of restoration damages on this ground.

3. Finally, the Railroad contends that the trial court erred in denying its motion for j.n.o.v. on the issue of attorney fees. The jury may award expenses of litigation under OCGA § 13-6-11 where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." An award of attorney fees under this Code section "should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense."[21] In the instant case, the trial court directed a verdict on the issue of stubborn litigiousness but allowed the jury to consider whether the Railroad had acted in bad faith or caused Lusk unnecessary trouble and expense. The court also instructed the jury that it could not award Lusk attorney fees if it found that there was "a bona fide, a good faith controversy" between the parties. The jury rejected a finding of bad faith and awarded attorney fees on the "unnecessary trouble and expense" ground.

Although the jury apparently found that no bona fide controversy existed, the evidence does not support this finding. The expert

---

[18] 143 Ga. 206 (84 SE 451) (1915).
[19] Id. at 207 (2).
[20] Id. at 208 (5) (a).
[21] (Citation and punctuation omitted.) *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 224 (6) (312 SE2d 386) (1983).

witnesses offered opposing opinions as to the cause of the erosion and as to the cost of repairing the property. This evidence demonstrates the existence of a genuine dispute. "Where a bona fide controversy exists, attorney's fees may be awarded under OCGA § 13-6-11 only where the party sought to be charged has acted in bad faith in the underlying transaction."[22] Absent a finding of bad faith, the award of attorney fees for causing Lusk "unnecessary trouble and expense" cannot be sustained.

Lusk cites *Georgia-Carolina Brick &c. Co. v. Brown*[23] and *Morris v. Savannah Valley Realty*[24] in support of the proposition that the disparity between the damages sought and those actually awarded does not mandate a finding of a bona fide controversy. While the proposition is correct, it is inapplicable. The Railroad presented expert testimony disputing that the accumulation of the debris under the trestle was the proximate cause of the erosion. Accordingly, the Railroad genuinely disputed causation as well as the amount of damages sought by Lusk. In addition, the award of attorney fees in *Georgia-Carolina Brick &c. Co.*[25] was upheld based on the defendant's bad faith, a finding the jury rejected in the case at bar. *Morris*[26] involved breach of an exclusive listing agreement which the defendant stubbornly refused to honor. These cases are inapposite.

It follows that the trial court erred in denying the Railroad's motion for j.n.o.v. on this claim. Consequently, the case must be remanded with direction for the trial court to strike that portion of the judgment awarding Lusk $74,238 for expenses of litigation and attorney fees.

*Judgment affirmed in part and reversed in part. Case remanded with direction. Andrews, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 12, 2002 —
RECONSIDERATION DENIED DECEMBER 6, 2002 

*Casey, Gilson, Williams & Shingler, Matthew D. Williams, Joyce G. Lewis*, for appellant.

---

[22] *Latham v. Faulk*, 265 Ga. 107, 108 (2) (454 SE2d 136) (1995), citing *Dimambro Northend Assoc.*, supra at 224-225 (6).

[23] 153 Ga. App. 747 (266 SE2d 531) (1980).

[24] 233 Ga. App. 762 (505 SE2d 259) (1998).

[25] Supra at 750 (2) (B).

[26] Supra at 765 (3).

*Hasty, Pope & Ball, William G. Hasty, Jr., Jonathan A. Pope,* for appellee.