A10A1850. GREENE COUNTY SCHOOL DISTRICT v. CIRCLE Y CONSTRUCTION, INC.
(708 SE2d 692)

MILLER, Presiding Judge.

Circle Y Construction, Inc. filed the instant suit against the Greene County School District, seeking damages for breach of contract and restitution. The school district filed a motion to dismiss the suit for failure to state a claim upon which relief could be granted under OCGA § 9-11-12 (b) (6). The trial court denied the motion. We granted the school district's application for interlocutory appeal to review the trial court's decision. The school district contends that the trial court erred in denying its motion to dismiss since (i) the multi-year contract was void due to its failure to comply with the provisions of OCGA § 20-2-506 (b) and (ii) the restitution claim was barred by the doctrine of sovereign immunity. For the reasons set forth below, we affirm the trial court's denial of the motion to dismiss as to the breach of contract claim. We also affirm as to the restitution claim seeking compensation for work performed under the contract. To the extent that the restitution claim also seeks compensation for work that was not contemplated by the contract, however, we must reverse.

"In ruling on a motion to dismiss, the trial court must accept as true all well-pled material allegations in the complaint and must resolve any doubts in favor of the plaintiff. We review the trial court's ruling de novo." (Citation, punctuation and footnote omitted.) *Roberson v. Northrup*, 302 Ga. App. 405 (691 SE2d 547) (2010).

So viewed, the complaint, as amended, alleged that on or about April 16, 2008, the school district and Circle Y entered into a contract whereby Circle Y was to provide construction management services for projects to renovate, repair, improve, and add to the school district's facilities.[1] Circle Y's services were to be performed on projects that the county's voters had approved in a referendum for "ELOST" (Educational Local Option Sales Tax) funding. The con-

---

[1] In its brief, Circle Y contends that the contract was prepared by the school district's counsel. The school district does not refute this contention, but rather, asserts that the contract reflected the terms that both parties wanted at the time of its execution. Ironically, the school district now takes the position that the contract that it prepared was void ab initio.

tract set forth extensive duties that Circle Y was required to perform, including the preparation of daily and monthly reports reflecting the progress and costs of the projects. The contract did not contain an explicit termination date, but provided that either party could terminate the contract for cause upon seven days' written notice. Approximately 11 months after the contract was formed, the school district sent Circle Y a letter terminating the contract.

Circle Y filed suit against the school district, seeking damages for breach of contract and restitution.[2] Circle Y alleged that the school district's termination of the contract was without cause. Circle Y further alleged that the school district had failed to tender compensation for work that had been performed under the contract and for additional work that was not contemplated by the contract. The school district filed an answer that denied the material allegations of the complaint. The school district also filed a motion to dismiss the complaint for failure to state a valid claim, contending that the multi-year contract was void under OCGA § 20-2-506 and that the claims for restitution, sounding in quantum meruit, were barred by sovereign immunity. Following a hearing, the trial court denied the school district's motion.

1. The school district contends that the trial court erred in failing to find that the multi-year contract was void as a matter of law. We disagree.

> The Georgia Constitution provides that no political subdivision of the state "shall incur any new debt without the assent of a majority of the qualified voters voting in an election held for that purpose as provided by law." Ga. Constitution [of] 1983, Art. IX, Sec. V, Par. I. . . . [I]f a municipality undertakes an obligation that extends beyond a single fiscal year, then a new "debt" has been incurred within the meaning of the Georgia Constitution and requires voter approval.

(Punctuation omitted.) *Barkley v. City of Rome*, 259 Ga. 355 (381 SE2d 34) (1989). When voter approval is obtained for a multi-year contract, the contract is constitutionally valid and enforceable. See *Burns v. Decatur County*, 178 Ga. 275 (173 SE 127) (1934) (concluding that the county's voters had approved the issuance of bonds for paving highways, and thus, the bond indebtedness was enforceable). Here, the complaint, as amended, alleged that Circle Y's services under the contract were for projects that the county's voters had

---

[2] The original complaint alleged a claim for quantum meruit. The complaint was later amended to substitute the restitution claim in lieu of the quantum meruit claim.

approved in a referendum for ELOST funding. Based upon this allegation, the parties' multi-year contract was enforceable and constitutionally valid.[3] Id.

Otherwise, the contract was governed by the provisions of OCGA § 20-2-506, specifically applying to multi-year contracts entered into by school systems in this state. That statute provides, in part, as follows:

> (b) Except as otherwise provided in this Code section, each county, independent, or area school system in this state shall be authorized to enter into multi[-]year lease, purchase, or lease purchase contracts of all kinds for the acquisition of goods, materials, real and personal property, services, and supplies, provided that any such contract shall contain provisions for the following:
>
> (1) The contract shall terminate absolutely and without further obligation on the part of the school system at the close of the calendar year in which it was executed and at the close of each succeeding calendar year for which it may be renewed as provided in this Code section;
>
> (2) The contract may provide for automatic renewal unless positive action is taken by the school system to terminate such contract, and the nature of such action shall be determined by the school system and specified in the contract;
>
> (3) The contract shall state the total obligation of the school system for the calendar year of execution and shall further state the total obligation which will be incurred in each calendar year renewal term, if renewed[.]
>
> . . .

OCGA § 20-2-506 (b). Significantly, subsection (h) of the statute further provides that "[n]othing in this Code section shall restrict school systems from executing reasonable contracts arising out of their proprietary functions." OCGA § 20-2-506 (h).

It is undisputed that the instant multi-year contract did not contain the termination provisions specified in subsection (b) of the statute, as set forth above. In an oral pronouncement of its ruling denying the motion to dismiss, the trial court nevertheless determined the contract was proprietary in nature, and thus, was not

---

[3] In ruling on a motion to dismiss, the allegations of the complaint must be accepted as true. See *Roberson*, supra, 302 Ga. App. at 405. If there was evidence otherwise establishing that Circle Y's services were not covered by the ELOST funding, the school district needed to pursue a motion for summary judgment under OCGA § 9-11-56 (c).

restricted by the requirements of subsection (b). See OCGA § 20-2-506 (h). Therefore, the question presented is whether a multi-year contract arising out of a school district's proprietary functions is exempt from the requirements of OCGA § 20-2-506 (b). This particular issue is a matter of first impression before our Georgia state courts[4] and requires a construction of OCGA § 20-2-506 (h).

> [T]he cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose.... [W]here a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.

(Citations and punctuation omitted.) *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Here, the plain language of OCGA § 20-2-506 (h) provides an exception to the statutory mandates for multi-year contracts by directing that *"[n]othing in this Code section shall restrict school systems from executing reasonable contracts arising out of their proprietary functions."* (Emphasis supplied.) Construing subsection (h) according to its plain terms, it follows that the validity and execution of a reasonable proprietary contract is not restricted by the provisions of subsection (b). Id. This construction is reasonable in light of prior precedents reflecting that our state courts generally have allowed more flexibility for contracts made in the exercise of a municipality's proprietary functions. See *Brown v. City of East Point*, 246 Ga. 144, 145 (268 SE2d 912) (1980) (noting that "cases have made a distinction between contracts made by a municipality in the exercise of its proprietary function as opposed to its governmental function, the courts allowing more flexibility in contracting in connection with the proprietary functions of a mu-

---

[4] An unpublished federal district court decision involving a school district's alleged breach of photocopier leases included a discussion of the provisions of OCGA § 20-2-506 (b) and (h). See *Xerox Corp. v. Long County Bd. of Ed.*, No. CV205-175, 2006 U. S. Dist. LEXIS 23286, at *12-17 (I) (A) (S.D. Ga. Mar. 21, 2006). The court noted that the distinction between governmental and proprietary contracts has been unclear and inconsistent under Georgia case law. Id. at *17 (I) (A). The court nevertheless concluded that the photocopier leases did not impair the school district's legislative functions and that the leases were enforceable to the extent that there was some evidence that they had been ratified by the county. Id. at *17-18, 20-22 (I) (A), (C). The federal court's decision, however, is not binding on this court. See *Porter v. Food Giant*, 198 Ga. App. 736, 738 (1), n. 2 (402 SE2d 766) (1991).

nicipality"); *Unified Govt. of Athens-Clarke County v. North*, 250 Ga. App. 432, 435 (1) (551 SE2d 798) (2001) (same). See also *City of Powder Springs v. WMM Properties*, 253 Ga. 753, 756 (2) (325 SE2d 155) (1985) (concluding that the statutory prohibition of OCGA § 36-30-3 (a), preventing one council from binding its successors, is not applicable to a municipality's proprietary functions).

We recognize, however, that the provisions of OCGA § 20-2-506 do not define the term "proprietary" for a determination of which types of contracts fall within its exception. Notwithstanding the absence of a statutory definition, the term "proprietary function" has been generally defined as "[a] municipality's conduct that is performed for the profit or benefit of the municipality, rather than for the benefit of the general public." See Black's Law Dictionary 1256 (8th ed. 2004).[5] Case law reflects that the determination of whether a contract falls within the government's proprietary function depends upon the subject matter or the nature of the services to be provided under the contract. See *City of Powder Springs*, supra, 253 Ga. at 757-758 (2) (a municipality's multi-year agreement to provide access to its sewer system was a proprietary function, and therefore, was not statutorily prohibited); *Brown*, supra, 246 Ga. at 145 (an ordinance to give pay increases to police officers clearly involved a governmental function); *Unified Govt. of Athens-Clarke County*, supra, 250 Ga. App. at 436 (1) (the county's decision to construct an access road was a governmental function, but the subsequent steps to complete the project were within its proprietary function). The execution of a contract may involve a mix of both governmental functions and proprietary functions. See *Unified Govt. of Athens-Clarke County*, supra, 250 Ga. App. at 436 (1).

In *Unified Govt. of Athens-Clarke County*, we held that although the county's decision to commit to the construction of an access road was governmental, the subsequent steps employed to complete the project were proprietary in nature. Id. The allegations in the instant case likewise indicate that the school district's decision to engage in the construction projects may have been governmental, but its solicitation of private assistance from Circle Y to perform the subsequent steps necessary to complete the projects was proprietary in nature. To the extent that the contract was within the school district's proprietary function, the exception under OCGA § 20-2-506 (h) applied and compliance with the provision of subsection (b) of the statute was not required.

---

[5] The adjective "proprietary" is also commonly defined as "privately owned and managed and run as a profit-making organization." See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/proprietary.

The school district argues to the contrary that this Court should follow the decision in *Wasilkoff v. Douglas County*, 227 Ga. App. 232 (488 SE2d 722) (1997), which interpreted a different, but substantially similar, provision under OCGA § 36-60-13 (a) and concluded that a multi-year computer lease purchase agreement was void due to its failure to comply with the termination provision of the statute. Significantly, however, the *Wasilkoff* decision did not determine whether the multi-year contract was proprietary, as opposed to governmental, and did not issue an interpretation of the exception for proprietary contracts. See *Wasilkoff*, supra, 227 Ga. App. at 233-234. Accordingly, *Wasilkoff* is distinguishable and does not control the issue here.

In this case, because the allegations indicated that the multi-year contract pertained to projects that the county's voters had approved in ELOST referendums or was otherwise within the school district's proprietary functions, the trial court was authorized to conclude that the contract was not void. See *Burns*, supra, 178 Ga. at 281. See also OCGA § 20-2-506 (h); *Unified Govt. of Athens-Clarke County*, supra, 250 Ga. App. at 436 (1).

2. The school district also contends that the trial court erred in denying its motion to dismiss Circle Y's restitution claim. It argues that the claim was barred by the doctrine of sovereign immunity.

The Georgia Constitution of 1983, Art. I, Sec. II, Par. IX (c), waives the defense of sovereign immunity "as to any action ex contractu for the breach of any written contract" entered into by a county or a school district. See generally *Kaylor v. Rome City School Dist.*, 267 Ga. App. 647, 650 (2) (600 SE2d 723) (2004); *Merk v. DeKalb County*, 226 Ga. App. 191 (1) (486 SE2d 66) (1997). To recover for breach of contract, an express contract with the school district must be shown. See *PMS Constr. Co. v. DeKalb County*, 243 Ga. 870, 872 (2) (257 SE2d 285) (1979). There can be no recovery against the school district for an implied contract. Id.

Accordingly, to the extent that Circle Y's restitution claim sought to recover the reasonable value of its services rendered under the written contract, the claim was not barred. See *PMS Constr. Co.*, supra, 243 Ga. at 872-873 (2). However, to the extent that the restitution claim also sought compensation for work that was not contemplated by the written contract, a recovery on that ground was precluded and dismissal was required. See *Merk*, supra, 226 Ga. App. at 193 (1) ("an implied contract will not support a waiver of sovereign immunity"). Accordingly, the trial court's denial of the motion to dismiss the restitution claim is affirmed in part and reversed in part.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and McFadden, J., concur.*

DECIDED MARCH 28, 2011 — 

*Harben, Hartley & Hawkins, J. Stanley Hawkins, Reagan G. Sauls*, for appellant.
*Brenda H. Trammell*, for appellee.